Belknap
No. 96-204

FRANCES AND WAYNE JOHNSON

v.

CITY OF LACONIA

October 29, 1996

*Schapira Professional Association*, of Manchester (*Jeffry A. Schapira* on the brief and orally), for the plaintiffs.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Douglas N. Steere* and *Dyana J. Crahan* on the brief, and *Ms. Crahan* orally), for the defendant.

BRODERICK, J. In this interlocutory appeal, the City of Laconia (city) challenges the Superior Court's (*Perkins*, J.) determination that the city is not immune, under RSA 231:92-a (1993), from liability for injuries sustained on a municipal parking lot. We affirm and remand.

In January 1992, plaintiff Frances Johnson allegedly sustained injuries after slipping and falling on ice on a municipal parking lot at the Belknap Mill Plaza in Laconia. She and her husband filed suit against the city for negligence and loss of consortium. The city moved to dismiss, arguing that it is immune from liability under RSA 231:92-a, which provides:

> Notwithstanding RSA 231:90-92, a municipality shall not be held liable for damages arising from insufficiencies or hazards on public highways, bridges, or sidewalks, even if it has actual notice or knowledge of them, when such hazards are caused by snow, ice, or other inclement weather, and the municipality's failure or delay in removing or mitigating such hazards is the result of its implementation, absent gross negligence or reckless disregard of the hazard, of a winter or inclement weather maintenance policy or set of priorities adopted in good faith by the officials responsible for such policy . . . .

The trial court denied the motion, concluding that because the statute makes no reference to parking lots, "there is no indication that the legislature meant to cover damages arising from hazards or insufficiencies on municipal parking lots." This interlocutory appeal followed the trial court's denial of the city's motion for reconsideration.

■ On appeal, the city maintains that it is immune from liability under RSA 231:92-a because the Belknap Mill Plaza parking lot falls within the scope of "public highways, bridges, or sidewalks" as described in the statute. The issue before the court is thus one of statutory construction. In such matters, "this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Welch v. Director, N.H. Div. of Motor Vehicles*, 140 N.H. 6, 8, 662 A.2d 292, 293 (1995) (quotation omitted). Our analysis begins with the statutory language itself; "[w]hen that language is plain and unambiguous, we need not look beyond the statute for further indications of legislative intent." *Appeal of Booker*, 139 N.H. 337, 341, 653 A.2d 1084, 1087 (1995) (quotation omitted). Further, "we ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise." *Id.* (quotation and brackets omitted); *see* RSA 21:2 (1988).

■ In this case, the statutory language is plain and unambiguous. RSA 231:92-a provides that municipalities shall be immune from liability for injuries sustained on "public highways, bridges, or sidewalks." The statute does not mention immunity from liability for injuries suffered on "parking lots." Nor is "parking lot" a commonly accepted meaning of "highway," "bridge," or "sidewalk." Indeed, the legislature has elsewhere defined "highways" as "roads," *see* RSA 229:1 (1993), while "bridge" is typically defined as "a structure erected over a depression or an obstacle to travel," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 276 (unabridged ed. 1961), and "sidewalk" refers to "a walk for foot passengers usu[ally] at the side of a street or roadway," *id.* at 2113. That parking lots may, on occasion, be functionally related to highways, bridges, or sidewalks does not render the statutory language ambiguous, and it is not our province to "consider what the legislature might have said or add words that the legislature did not include." *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994).

The city nonetheless contends that our decisions in *Stott v. Manchester*, 109 N.H. 59, 242 A.2d 58 (1968), and *Opinion of the Justices*, 109 N.H. 396, 254 A.2d 273 (1969), support its construction of RSA 231:92-a. The city's reliance upon those cases is misplaced.

In *Stott*, we merely concluded that for purposes of municipal immunity, the establishment and maintenance of parking lots, like the establishment and maintenance of highways, are traditional functions of government. *See Stott*, 109 N.H. at 61, 242 A.2d at 60. We reiterated this point in *Opinion of the Justices*, noting that "[p]ublic parking facilities are an essential part of our public highway system," and that "[t]he construction and maintenance of such facilities is a recognized and established municipal function." 109 N.H. at 399, 254 A.2d at 275. In neither case did we state that parking lots are equivalent to highways, bridges, or sidewalks.

More importantly, at the time we decided those cases municipalities still enjoyed judicially created immunity from tort liability. *See City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 112–13, 575 A.2d 1280, 1282–83 (1990) (recounting history of municipal immunity in New Hampshire). Judicially created municipal immunity no longer exists. *Id.* at 115, 575 A.2d at 1283. Municipalities today enjoy immunity from tort liability primarily by the grace of the legislature, which, consistent with the State Constitution, may act "to specify the terms and conditions of suit against cities and towns, set reasonable limits on the amount of recovery, or take any other action which in its wisdom it may deem proper." *Id.* at 115, 575 A.2d at 1284. And the legislature has acted: in 1991, it granted municipalities immunity from tort liability in suits alleging injuries sustained on "public highways, bridges, or sidewalks." RSA 231:92-a. As discussed above, this grant of immunity plainly did not include immunity for injuries suffered on parking lots.

*Affirmed and remanded.*

All concurred.