# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 35  SSM 27
Randall M. Hinton,
     Appellant,
    v.
Village of Pulaski,
     Respondent.

Submitted by John A. Cirando, for appellant.
Submitted by Brian W. McElhenny, for respondent.
New York State Conference of Mayors and Municipal Officials, amicus curiae.

MEMORANDUM:

The order of the Appellate Division should be affirmed, with costs.

The Village of Pulaski Code provides, in relevant part, that "[n]o civil action shall

be maintained" against defendant Village of Pulaski for personal injury sustained as a result

of a defect in "any street, highway, bridge, culvert, sidewalk or crosswalk" unless prior written notice of the alleged defect is provided to the Village (Village of Pulaski Code § 122-14; see also Village Law § 6-628). Plaintiff commenced this action against the Village after he fell while descending an exterior stairway that connects a public road to a municipal parking lot. The Village did not receive prior written notice of the alleged defect before plaintiff commenced suit, and the Village moved for summary judgment dismissing the complaint. Supreme Court granted the motion (59 Misc 3d 1220 [A] [Sup Ct, Oswego County 2016]), and the Appellate Division unanimously affirmed (160 AD3d 1446 [4th Dept 2018]).

In Woodson v City of New York, this Court determined that a stairway may be classified as a sidewalk for purposes of a prior written notice statute if it "functionally fulfills the same purpose that a standard sidewalk would serve" (93 NY2d 936, 937-938 [1999], citing Donnelly v Village of Perry, 88 AD2d 764, 765 [4th Dept 1982] [holding that steps between a roadway and public sidewalk were "the equivalent of a sidewalk" because they "provide(d) a passageway for the public"] and Youngblood v Village of Cazenovia, 118 Misc 2d 1020, 1022 [Sup Ct, Madison County 1982] [holding that steps are "essentially sidewalks laid on slopes, often connecting two stretches of sidewalk"], affd on opn below 93 AD2d 962 [3d Dept 1983]; see also Groninger v Village of Mamaroneck, 17 NY3d 125, 129 [2011] [parking lot served the "functional purpose" of a highway, thereby triggering a notice requirement]). In the twenty years since Woodson was decided, the Legislature – "though fully capable of corrective action" – has done nothing to "signal

disapproval" of this interpretation (Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d 202, 225 [2017]). As the identical question has been long since resolved by this Court, the present case involves the application of settled precedent – not statutory interpretation (see Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d 799, 819-820 [2015] [noting that an "extraordinary and compelling justification is needed to overturn precedents involving statutory interpretation" because, "if the precedent or precedents have misinterpreted the legislative intention embodied in a statute, the Legislature's competency to correct the misinterpretation is readily at hand"] [internal citation, quotation marks, and brackets omitted]; Matter of Eckart, 39 NY2d 493, 499-500 [1976] ["Generally, once the courts have interpreted a statute any change in the rule will be left to the Legislature, particularly where the courts' interpretation is a long-standing one"]; Heyert v Orange & Rockland Util., 17 NY2d 352, 360 [1966] [noting that "established precedents are not lightly to be set aside" because "the remedy (is) ordinarily with the Legislature"] [internal citation and quotation marks omitted]; see also People v Taylor, 9 NY3d 129, 148 [2007] ["Stare decisis is deeply rooted in the precept that we are bound by a rule of law—not the personalities that interpret the law"]). We see no compelling reason to overrule our longstanding precedent.[1]

The courts below correctly applied Woodson in holding that the stairway at issue "functionally fulfills the same purpose" as a standard sidewalk, and therefore plaintiff was

---

[1] Nor do we agree that the test derived from Woodson (and applied again in Groninger) is limited to an examination of whether a defect would cause "more or less the same kinds of injuries" (dissenting op at 13).

required to show that the Village received prior written notice of the allegedly defective

condition (Woodson, 93 NY2d at 938). In its motion for summary judgment, the Village

established that plaintiff failed to plead or prove prior written notice. Plaintiff did not raise

a triable issue of fact in opposition, and therefore summary judgment was properly awarded

to the Village. Plaintiff's remaining arguments lack merit or are unpreserved for review.

Hinton v Village of Pulaski

SSM No. 27

WILSON, J. (dissenting):

In this case, we ask: is a stairway a "sidewalk"? Conventions of normal English, legislative policy, and the invention of the escalator, would answer "no." But through the alchemy of a "functional equivalence" test conjured from <u>Woodson v City of New York</u>

(93 NY2d 936, 937 [1999]), one can buy a sidewalk to heaven, climb the sidewalk to the stars, and build a sidewalk to paradise (with a new slab every day). Indeed, while on the subject of alchemy, if Harry Potter was set in New York, his Dursley abode would no doubt change to a cupboard under the sidewalk.

This is a personal injury action in which Randall Hinton fell down an (allegedly) negligently-maintained stairway. In Village Law § 6-628, the legislature gave villages what amounts to "prior written notice" protection from certain negligence actions, providing, in relevant part, that "[n]o civil action shall be maintained against [a] village for damages or injuries to person or property sustained in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk being defective[ or] unsafe" (Village Law § 6-628).

By holding that the stairway in this case is a "sidewalk," the majority rewrites the Village Law to provide that the prior written notice rule applies to actions seeking damages for personal injuries allegedly sustained as a consequence of a defective village stairway – even though the legislature specifically declined to include stairways in the list of municipal passageways to which prior written notice protection applies "evincing an intent to exclude any others not mentioned" (Walker v Town of Hempstead, 84 NY2d 360, 367 [1994]). "It is not within the province of this court to rewrite the enactments of the Legislature" (In re Chase Nat. Bank of City of New York, 283 NY 350, 360 [1940]; accord Wolpoff v Cuomo, 80 NY2d 70, 79 [1992]). I respectfully dissent because I cannot agree with either the majority's revision of Village Law § 6-628 or its conclusion that this stairway is a sidewalk.

# I

The Village of Pulaski is a town of a few thousand people in Oswego County, NY, about ten minutes' drive from Lake Ontario. This is fishing country, and the heart of this fishing county is Salmon River. "Unique in the Northeast, the Salmon River is an angler's mecca. Thousands of trophy Chinook and coho salmon, steelhead, rainbows and brown trout, driven the by urge to spawn, run its length each year. Twelve miles of classic riffs, pools, and runs are accessible to those who would test its waters with rod and reel" (Oswego County Tourism, *Visit Oswego County, New York: Where to Fish*, http://visitoswegocounty.com/fishing-hunting/fishing/where-to-fish/ (last accessed Feb. 19, 2018).

Locals will tell you the one of the best fishing spots on the Salmon River is the "Black Hole," on the west end of Pulaski. The south bank is part of a salmon run, but the north bank is public. (id). At the peak of the season, hundreds of anglers ply the waters at the Black Hole. The throng regularly blocked the streets, so the Village installed signage directing anglers to park in an adjacent car park normally used by the Village Department of Public Works. From there, anglers must walk down a stairway, cross Riverview Drive, and walk further down the undeveloped bank before they reach the Black Hole. That stairway (many pictures of which are in the parties submissions) that is the subject of this appeal. It is a "railway tie" stairway, made of compacted earth nosed with recycled railway ties, many of which still include the rusted nails they once had. The stairs are steep, irregularly spaced, with the space between the nosings made of grasses and muddy strands

with potholes and muddy clumps (which were exacerbated due to a recent heavy rain). The railings were rickety and wooden, and at a low height; there was also less railing on one side than the other. The stairway was built by the Village.

Mr. Hinton, the plaintiff in this case, is a licensed fishing guide and owns a fishing lodge. He makes his living renting out rooms to anglers and taking them fishing. On October 19, 2013, at the height of the season, finding his schedule unexpectedly free, he decided to spend the afternoon fishing without clients. Although Mr. Hinton preferred less congested spots, he decided to give the Black Hole a try. He drove to the DPW parking lot as the signs instructed, gathered his things, and started down the stairway. About a third of the way down, he tripped—possibly over a rut in the stairs or one of the spikes protruding from the stairs—and went down head over heels. He broke his left ankle, severely injured his knee and suffered various sprains. As he explained in his deposition "my fishing season ended on that day," costing him both medical bills and his livelihood. Faced with those serious financial consequences, Mr. Hinton sued the Village, alleging that the Village had allowed the stairs to deteriorate and become a hazard to members of the public, and that his injuries were caused by the Village's negligent maintenance of the stairway.

In response the Village argued, among other things, that even if Mr. Hinton was injured as a result of the Village's negligence, he must lose, because Village Law § 6-628 provides that "no civil action shall be maintained against the village for damages or injuries to person or property sustained in consequence of any street, highway, bridge, culvert,

sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed."[1]

Both Supreme Court (2016 NY Slip Op 51912[U]) and the Appellate Division (160 AD3d

1446 [2018]) agreed; we granted leave to appeal.

**II**

On its face, Village Law § 6-628 is inapplicable to this case: there is no dispute that

Mr. Hinton fell on the stairway. However, in Woodson v City of New York (93 NY2d 936,

937 [1999])—a memorandum decision devoid of facts—the Court held that because "the

stairway *in this case* functionally fulfills the same purpose that a standard sidewalk would

serve on flat topography, except that it is vertical instead of horizontal" (emphasis added),

that particular stairway was a "sidewalk" for purposes of a statute, General Municipal Law

§ 50-e(4), with text largely similar to the Village Law section at issue here.

That sentence has spawned a jurisprudence applying what we have come to call the

"functional equivalence test," where if a court thinks something not on the Village Law §

6-628 list is sufficiently like something on that list, it rewrites the statute to include it. Thus

in Groninger v Village of Mamaroneck (17 NY3d 125 [2011]), we held that a parking lot

"serves the functional purpose of a highway" (id. at 129) because "it was owned and

maintained by the Village and accessible to the general public for vehicular travel" (id),

---

[1] Laws dealing with other forms of local governments or governmental bodies have analogous language (see General Municipal Law § 50-e ["street, highway, bridge, culvert, sidewalk or crosswalk"]; Town Law § 65-a ["highway, bridge, culvert or sidewalk"]; Second Class Cities Law § 244 ["street, highway, bridge, culvert, sidewalk or crosswalk"]; and Highway Law § 139 ["road, highway, bridge or culvert"]).

even though, as the three dissenting Judges in that case explained at length, highways—accommodating moving vehicles—and parking lots—accommodating stationary vehicles—had precisely the opposite "functional purpose" (id at 134 [Lippman, C.J., dissenting]).

In this case, the lower courts and majority have created a sort-of transitive property of traversable surfaces. There was nothing resembling a sidewalk to which the stairway connected, but, said the lower courts, because the Court of Appeals previously held that a parking lot was "functionally equivalent" to a highway, it follows that the stairway, which was connected to this "highway," was a "sidewalk." By concluding that a slapdash stairway is a sidewalk because they both have the same "functional purpose" as a sidewalk, conveying people from place to place, the Court expands a single fact-specific determination into an erroneous doctrine.

We need principles, not "one of these things is/is not like the other" reasoning, that can help lower courts apply the specific list of Village Law § 6-628 and its sister statutes. By disposing of this case as it does today, the Court deprives the lower courts—and itself—of the opportunity to examine Woodson thoughtfully. As I explain, if the result in Woodson is correct, it is only so when understood in light of its peculiar facts. To understand why Woodson does not resolve this case, we need to return to first principles of statutory interpretation.

"When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature"

(DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). "We begin with the plain language of the statute, which is the clearest indicator of legislative intent" (T-Mobile Northeast, LLC v DeBellis, 2018 NY Slip Op 08539 [Ct App Dec. 13, 2018]). "When the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used" (People v Pabon, 28 NY3d 147, 152 [2016]). "Words of ordinary import in a statute are to be given their usual and commonly understood meaning, unless it is clear from the statutory language that a different meaning was intended" (We're Assocs. Co. v Cohen, Stracher & Bloom, 65 NY2d 148, 151 [1985]).

If those mantras, reliably repeated in most of our statutory interpretation cases, had any application here, Mr. Hinton would win. Village Law § 6-628 immunizes villages from suits alleging injuries "sustained in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed" without prior notice. No one argues that the stairway here is a highway, bridge, culvert, or crosswalk. In 1927, when Village Law § 6-628 was approved, and indeed since at least 1739, "sidewalk" meant "a paved footpath alongside a street or road, usually slightly raised above the level of the road surface" ("Sidewalk," Oxford English Dictionary [2019]). No one looking at the site of Mr. Hinton's fall would call it a sidewalk.

Likewise, the canons of construction bear out the intuition that the Legislature meant "sidewalk" when it wrote "sidewalk," rather than some broader term. In a case interpreting the analogous General Municipal Law § 50-e(4), we explained that "we can only construe the Legislature's enumeration of six, specific locations in the exception (i.e., streets,

highways, bridges, culverts, sidewalks or crosswalks) as evincing an intent to exclude any others not mentioned" (Walker v Town of Hempstead, 84 NY2d 360, 367 [1994] [citing McKinney's Cons Laws of NY, Book 1, Statutes § 240]).[2] *Noscitur a sociis*, "the familiar canon of construction [in which] we ordinarily interpret the meaning of an ambiguous word in relation to the meanings of adjacent words" (Matter of Kese Industries v Roslyn Torah Found., 15 NY3d 485, 491 [2010]) does not apply here because "sidewalk" is not ambiguous, and even if it were, *noscitur a sociis* aims to limit the range of meanings of a set of words, not expand them (see, e.g., Avella v City of New York, 29 NY3d 425, 436 [2017]; cf. McKinney's Cons Laws of NY, Book 1, Statutes § 240; Bryan Gardner and Antonin Scalia, Reading Law at 197 [2012]; William Eskridge, Interpreting Law at 76 [2016]). None of the six words in Village Law § 6-628 deals with stairways unless viewed in the abstract, and if the legislature wanted to describe village infrastructure more abstractly it surely knew how to do so (see, e.g. Village Law § 6-602 [describing "streets *and public grounds* of a village"]).

"Where, as here, the legislative language is clear, we have no occasion to examine extrinsic evidence to discover legislative intent" (Makinen v City of New York, 30 NY3d

---

[2] Indeed, Bryan Gardner and the late Justice Antonin Scalia praised Johnson v City of Laconia (684 A2d 500, 501-02 [NH 1996]) as a correct result of the application of *expressio unius* canon. There, the New Hampshire Supreme Court interpreted N.H. Rev. Stat. § 231-92-a (1991) that immunized municipalities from "damages arising from insufficiencies on public highways, bridges, or sidewalks" to exclude a public parking lot; "because the law specified three types of public property but omitted all others, the immunity did not bar the lawsuit" (Bryan Gardner and Antonin Scalia, Reading Law, 110-111 [2012]; cf. Yates v United States, 135 S Ct 1074, 1093 [2015] [treating *Reading Law* as persuasive authority]).

81, 85 [2017]). However, what little extrinsic legislative evidence exists provides no support whatever for a "functional equivalence" test or any expansion of the meaning of the word "sidewalk." As near as can be determined, Village Law § 6-628's listing of "street, highway, bridge, culvert, sidewalk or crosswalk" descends directly[3] from various "local laws" passed by the Legislature in the late nineteenth century to limit the liability of villages in the wake of our landmark decision in Saulsbury v Village of Ithaca (94 NY 27, 27 [1883]). In Saulsbury, we held that because the charter of the municipal corporation in that case obliged the village to repair "sidewalks," it was liable for "injuries occasioned by an omission on its part to repair or remove a sidewalk . . . which had been, for a sufficient length of time to charge it with notice, in so defective a condition as to be dangerous for travel" (id. at 27).

---

[3] The Village Law § 6-628 began its life as section 341-a of the Village Law of 1927 (L 1927, Ch 650, § 42), having been recodified (with amendments not relevant here) in 1972 (L 1972 Ch 892). The 1927 law's language, however, was itself a wholesale import from the Second Class Cities law, copied in an effort to harmonize various laws pertaining to municipalities (see L 1927, Ch 650, Bill Jacket). For present purposes, the prior notice provision appears to have been first added to the Second Class Cities Law in 1906, as part of the Uniform Charter of Cities of the Second Class (L 1906 Ch 473), and today (after yet another recodification) can be found at Second Class Cities Law § 244; it reads (and read) almost identically to the Village Law provision ("street, highway, bridge, culvert, sidewalk or crosswalk"). The 1906 law in turn was adopted to iron out inconsistencies in local laws that had cropped up over the preceding quarter-century, and incorporated common charter amendments (which in those days required action from the state legislature) so as to develop a uniform rule.

The prior notice laws were—and indeed have always been—intensely controversial and carefully limited.[4] Not one of those local laws reached "stairways" and not one of the cases decided until well into the later 20th century did a court apply those or analogous provisions in the general laws to cover trips and falls down "stairways." Indeed, the prior notice statutes were adopted in the heyday of the presumption against derogation of the common law, where the Court declared "the rule to be well established and almost universally acted on, that statutes changing the common law must be strictly construed, and that the common law must be held no further abrogated than the clear import of the language used in the statutes absolutely requires" (Fitzgerald v Quann, 109 NY 441, 445 [1888]). All agree that prior notice statutes derogate the common law (Gorman v Town of

---

[4] In response to one of the first of such laws, adopted by the Legislature in 1881 and applying solely to the City of Cohoes (L 1881 Ch 183 ["the city of Cohoes shall not be liable for any damage or injury sustained by any person in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk in said city being out of repair, unsafe, [or] dangerous"]) a major treatise on negligence in New York declared "The City of Cohoes has, as appears by the reports, been the most negligently administered city in all the state. It seems to have found a new way of escaping the penalty, by making the law to wink at the carelessness of its officials" (John Brooks Leavitt, Law of Negligence in New York [1895] [reviewing McNally v City of Cohoes, 127 NY 350, 353 (1891)]). Likewise, a bill of identical wording introduced in 1892 pertaining to the then-City of Brooklyn (the five boroughs consolidated only in 1898) was condemned by the New York Times as "in keeping with the wild, untamed vagaries of this present Legislature." (The State Legislature, N.Y. Times at 3 [March 4, 1892] [available at https://www.nytimes.com/1892/03/04/archives/the-state-legislature-he-insurance-bill-restored-to-life-the.html]). Discussion of the careful balance struck when the Village Law prior notice provision was reviewed can be found in the New York State Legislative Annual for 1957 (at 205-07). A more contemporary controversy over (successful) efforts by New York City to incorporate almost identical language into its ordinances is thoroughly documented in Terri J. Frank, New York City's Pothole Law: In Need of Repair (10 Fordham Urban L.J. 323 [1982]).

Huntington, 12 NY3d 275, 279 [2009]); the Legislature knew full well that in this context when it said "sidewalk" that term would be construed to mean what it says, and nothing more.

## III

Text, context, structure, history, even statutory canons of construction provide no foundation for a "functional use" test that takes a list of six specific items of built environment and allows them to encompass a list of different, tangentially related other items. The majority does not deny this point, but argues that "the present case involves the application of settled precedent – not statutory interpretation" (majority op at 3). If Woodson v City of New York (93 NY2d 936 [1999]), the sole substantive citation in the majority's opinion, truly stood for the proposition the majority cites it for—that prior notice statutes permitted such free association of concepts and statutory terms—it would have represented a radical break from centuries of this Court's common law jurisprudence as well as a sudden and uncharacteristic departure from our settled principles of statutory interpretation—and all in a terse memorandum.[5] I do not believe our Court would be so cavalier with its own precedents. Woodson must mean something different, then, than what the majority says it means here. Once we understand it in its context, it becomes clear why it does not control this case.

---

[5] I note, as did the dissenters in Groninger (17 NY3d at 133) that Woodson did not engage in the thoughtful statutory analysis that once characterized our prior notice decisions, like Walker.

In <u>Woodson</u>, we held that "when stairs are integrated with, or serve as part of, a connected standard sidewalk, they plainly fall within the meaning of that already existing category" (<u>id</u>. at 937). Distinguishing <u>Walker v Town of Hempstead</u>, where we held that a paddleboard court was not covered by the prior notice statute in question (84 NY2d at 368), we explained in <u>Woodson</u> that "a paddleball court is functionally different from each of the six locations enumerated in General Municipal Law § 50–e (4) (which is identical, as relevant here, to Village Law § 6-628). The stairway in this case functionally fulfills the same purpose that a standard sidewalk would serve on flat topography, except that it is vertical instead of horizontal" (<u>Woodson</u>, 93 NY2d at 938). The stairway down which Mr. Hinton fell was not "integrated with, or a part of, a connected standard sidewalk" (<u>id</u>. at 937). Thus <u>Woodson</u> does not, on its own terms, determine the result here.

Although the Court in <u>Woodson</u> nowhere explained its basis for interposing a functional equivalence test on words had previously held in <u>Walker</u> to be exclusive, a review of the record and briefing in that case reveals the underlying rationale for the Court's opinion. The stairway at issue in <u>Woodson</u> connected the Julius Richman Memorial Park to Valentine Avenue in the Bronx. At the time of the suit, the stairway was relatively short, shallow, and perfunctory, comprising shallow concrete steps up a short, gentle incline connecting two concrete sidewalks. Crucially, the steps could have been replaced with a simple pavement ramp with the same result. What mattered was not merely that the stairway in <u>Woodson</u> served the same purpose as a standard sidewalk (making it easier for people to travel from place to place), but had the same functional potential to injure

someone if defectively maintained: a person who tripped and fell on that stairway would experience more or less the same kinds of injuries as a person who tripped on a hypothetical sidewalk ramp. The same could be said of our decision in Groninger v Village of Mamaroneck (17 NY3d 125, 129 [2011]) where the injuries one would incur owing to defects in a "highway" (the term at issue in that case) are the same kind of injuries one would incur owing to defects in a parking lot (where the plaintiff in Groninger tripped and fell).

What could make Woodson and Groninger consistent with Walker, in other words, is that they were faithful to the underlying purpose of the statute—to limit somewhat municipalities' duty to detect flaws in their infrastructure, but only for those items of infrastructure that, even when unrepaired, present modest danger to the user.[6] Thus a playground would be properly excluded from the reach of the prior notice law because its potential to injure its intended users is much greater than the items on the list—a small

---

[6] Because of that purpose (as well as the statutory text), we have held that prior notice statutes do not cover acts of municipal "affirmative negligence." Municipalities are liable for dangerous hazards they affirmatively create, rather than allow to happen through neglect, even if their creations are included on the prior notice list, on the theory that such "a hazard was foreseeable, insofar as the municipality created it by, for example, digging an unmarked ditch in a road or neglecting to cover a street drain" (San Marco v Village and Town of Mount Kisco, 16 NY3d 111, 117 [2010]). Therefore, for example, in San Marco we reversed a grant of summary judgment when plaintiffs showed the municipality's negligent snow plowing allowed black ice to form where it would not otherwise have formed. I note that Mr. Hinton argues in this Court that the Village affirmatively created the hazard by building an inherently dangerous stairway. However, that argument was not made in the trial court (in which Mr. Hinton argued only that the Village had failed to maintain the stairway) and is therefore not preserved for our review (McGovern v Mount Pleasant Central School Dist., 25 NY3d 1051, 1053 [2015]).

child is much likelier to be injured from a fall off a slide than such a child might be from a tumble on the sidewalk. Unimproved trails that have been cut through municipal parks are likewise distinguishable from sidewalks and roads not because they are comprised of a material other than concrete but because they present a different, and greater, injury potential than their more uniform infrastructural cousins (see, e.g., Quackenbush v City of Buffalo, 43 AD3d 1386 [4th Dept 2007] ["reject(ing) the City's contention that the unimproved trail or path upon which (the) plaintiff was injured (wa)s the functional equivalent of a sidewalk"]; Iannuzzi v Town of Wallkill, 54 AD3d 812, 813 [2d Dept 2008] [holding that an unpaved dirt path in a public park was not a sidewalk]; see also Cieszynski v Town of Clifton Park, 124 AD3d 1039, 1040-1041 [3d Dept 2015] [applying similar reasoning and holding that an unimproved grassy area could not be considered the functional equivalent of either a highway or sidewalk for purposes of a prior written notice statute])—as well, of course, as falling very far outside even a generously expanded "plain meaning" of any of the six statutory terms at issue in this case.

The majority—having extended Woodson well beyond its limited holding—ignores this discussion of what the functional equivalence test in Woodson meant and instead declares (without analysis) that only overruling Woodson would justify a different outcome in this case. The *stare decisis* reach of Woodson covers stairs integrated with a connected sidewalk, possessing the same injury potential as a sidewalk, but not other stairs. Expanding Woodson, without any articulated justification or analysis, is not "the application of settled precedent" (majority op at 3) but the creation of a new doctrine that

all stairs are sidewalks, or perhaps that some are, with no rule as to how to sort them beyond a mantra ("functional equivalent") that raises more questions in its bare form than it answers. That the Legislature has not "disapprov[ed]" Woodson is of no moment. Ignoring a holding that a few steps connecting two sidewalks are a "sidewalk" implies nothing about the legislature's view of whether, as the majority seems to affirm today, all stairways are always sidewalks.

The problem with the expanded "functional equivalence" test the majority endorses is that it considers all elements of a sidewalk's "function" except the one that mattered most to the legislature—its function as a source of injury. Woodson recognized that some stairways may well possess the same injury profile as the common sidewalk, or be so closely integrated into existing sidewalk infrastructure as to be effectively indistinguishable from it. But most stairways are much more hazardous than sidewalks. "Falls are the leading cause of non-fatal injury in the United States, and are associated with significant morbidity and mortality among older adults," (Danielle Blazewick, et al, Stair-related injuries treated in United States Emergency Departments, 36 Am. J. Emergency Med. 608, 608 [2018]) and "stairways are a common location for falls, and they result in a disproportionate risk of death or severe injury" (JV Jacobs, A Review of Stairway Falls and Stair Negotiation, 49 Gait Posture 159, 159 [2016]). Almost 2 million people were admitted to emergency rooms for stairway-related injuries incurred on stairways outside the home between 1990 and 2012 (Blazewick, supra., at 610). Those injuries were incurred in large part because of characteristics possessed by stairways and not sidewalks: lack of

vertical uniformity of the steps, rickety handrails, and missing nosings—all characteristics, it appears, of the stairway in this case. Of course, whether a particular stairway is functionally equivalent to the injury potential of a sidewalk is a fact-intensive inquiry. But consideration of injury potential is the only way to make the "functional equivalence" test consistent with the purpose of the legislature in approving these prior notice statutes.

The majority's conclusion has regrettable real-world consequences. Village Law § 6-62 and other prior notice statutes "practically . . . result[s] in limiting a locality's duty of care" (Poirier v City of Schenectady, 85 NY2d 310, 314 [1995]). Today, by declaring the stairs at issue in this case are a "sidewalk," the Court deprives Mr. Hinton and others like him of the opportunity to prove whether municipalities are negligent in constructing or maintaining stairways that cause injuries. As a result, local governments will have less incentive to maintain their potentially dangerous stairways, making all of us less safe.

The plaintiff in this case does not ask us to overrule Woodson and I have no occasion here to consider whether its premises and purported test "leads to an unworkable rule, or that creates more questions than it resolves, [and therefore] may ultimately be better served by a new rule" (cf. People v Taylor, 9 NY3d 129, 149 [2007]). Woodson did not resolve the question in this case, which I posed at the start: does the word "sidewalk" mean "stairway"? It does not; I therefore dissent.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, with costs, in a memorandum.  Chief Judge DiFiore and Judges Rivera, Stein, Garcia and Feinman concur.  Judge Wilson dissents in an opinion in which Judge Fahey concurs.


Decided February 21, 2019