NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————

Merrimack
No. 2018-0551

THE STATE OF NEW HAMPSHIRE

v.

BRIAN ELDRIDGE

Argued: January 14, 2020
Opinion Issued: February 19, 2020

Gordon J. MacDonald, attorney general (Danielle H. Sakowski, senior assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J. The defendant, Brian Eldridge, appeals his convictions, following a jury trial in the Superior Court (Kissinger, J.), on one count each of possession of a controlled drug, see RSA 318-B:2, I (2017), and being a felon in possession of a firearm, see RSA 159:3 (2014). He argues that the trial court erred by: (1) concluding that the immunity afforded by RSA 318-B:28-b (2017) does not apply to the offense of possession with intent to sell a controlled drug, see RSA 318-B:2, I; (2) requiring him to waive that statutory immunity before instructing the jury on the lesser included offense of possession; and (3) denying his motion to suppress evidence. We conclude that the immunity provided by RSA 318-B:28-b does not extend to the offense of possession with intent to sell. However, we vacate the defendant's conviction for possession

because we hold that, under the circumstances in this case, the defendant was entitled to both an instruction on the offense of possession and the statutory immunity. We also conclude that the police officers' initial warrantless entry into the defendant's apartment was justified by the emergency aid exception to the warrant requirement.

## I. Facts

The following facts are supported by the record. At approximately 10:15 p.m. on May 3, 2017, Concord Police Officer Gorham was dispatched to an apartment at 28 Pierce Street in response to a 911 call reporting that the defendant may have overdosed and, as a result, was unconscious and not breathing. Gorham arrived at the apartment simultaneously with the Concord Fire Department. The firefighters and EMTs entered the apartment just ahead of Gorham and began treating the defendant, who was lying on the living room floor. Gorham proceeded to the kitchen, where she encountered the defendant's girlfriend. The girlfriend reported that she observed the defendant "shoot[] up" what she suspected was heroin and fall to the ground. Several minutes after Gorham arrived at the apartment, two other officers arrived, including Officer Levesque.

At that time, the Concord Police Department did not require its officers to carry Narcan, a medication that reverses the effect of opioid overdoses, and none of the three officers who initially responded to the scene provided any medical treatment to the defendant. The EMTs administered multiple doses of Narcan to the defendant and successfully revived him. At some point while the defendant was being treated, a member of the Fire Department handed Levesque a fabric bag, in which Levesque observed small plastic bags and pills. Levesque was also handed an open wooden box, which he described as a "drug kit," that contained syringes, a spoon, and a small plastic bag. After the firefighters and EMTs left the apartment, Levesque entered the living room and observed ammunition cans and a "somewhat transparent" case in which he perceived something resembling the barrel of a firearm.

The police subsequently applied for a warrant to search the apartment. During their search, they found two knives, a dismantled firearm, 9.7 grams of fentanyl, a scale, a large number of small plastic bags, drug use paraphernalia, and over $7,000. The defendant was indicted on one count each of possession of fentanyl with intent to sell and being a felon in possession of a firearm, and two counts of being a felon in possession of a deadly weapon, see RSA 159:3.[1]

The defendant moved to dismiss the indictments, arguing that RSA 318-B:28-b, III, immunized him from prosecution because he was the subject of a good faith request for medical assistance while he was experiencing a drug

---

[1] It was undisputed at trial that the defendant had previously been convicted of a felony.

overdose and the evidence underlying the indictments was obtained as a direct result of that request. The trial court denied the defendant's motion. It concluded that the statutory language only immunizes a defendant from the arrest, prosecution, and conviction of the controlled drug offenses of "possessing" and "having under his or her control," and none of the charged crimes fell under the statute's immunity provisions. See RSA 318-B:28-b, II, III. The court also noted that, although the evidence underlying his indictments was discovered as a result of the request for medical assistance, the statute expressly provides that it shall not be construed to limit the authority of the police to arrest a person for an offense not immunized by paragraphs II or III. See RSA 318-B:28-b, IV.

The defendant then moved to suppress the evidence seized as a result of the search of his apartment, arguing, in part, that the search violated his right to be free from unreasonable searches under Part I, Article 19 of the State Constitution and the Fourth Amendment to the Federal Constitution. The trial court denied the defendant's motion, concluding, among other things, that the police officers' initial entry into his apartment was justified under the emergency aid exception to the warrant requirement. The trial court further concluded that the officers' initial entry into the apartment was not primarily motivated to seize evidence because their presence was also necessary to secure the scene and protect first responders from dangers commonly associated with responses to overdose calls.

Prior to trial, the defendant raised the possibility that he would argue to the jury that he possessed the fentanyl without intent to sell it. The State acknowledged that it is "axiomatic" that possession is a lesser included offense of possession with intent to sell, but argued that the defendant would waive the immunity provided by RSA 318-B:28-b if he requested a jury instruction on possession. The defendant asserted that if the jury found that the State only proved possession, then the statute mandated that its verdict be set aside. The trial court postponed ruling on the issue to consider the arguments during the jury trial.

Before closing arguments, the trial court ruled that, if the defendant requested a jury instruction on possession, he was required to waive the immunity afforded by RSA 318-B:28-b. In reaching its decision, the trial court primarily relied on Commonwealth v. Shelley, 80 N.E.3d 335 (Mass. 2017), and State v. LaPlante, 117 N.H. 417 (1977). It found "very compelling" the "notion of the importance of the jury process being a rational one," and concluded that allowing the jury to deliberate on an offense for which the defendant could not be convicted called into question the process's rationality. The defendant objected to the trial court's ruling but ultimately opted to waive the immunity and the jury was instructed on the offense of possession.

The jury found the defendant not guilty of possession of fentanyl with intent to sell, but guilty of the lesser included offense of possession of fentanyl. It also found the defendant guilty of being a felon in possession of a firearm, and not guilty on both counts of being a felon in possession of a deadly weapon. This appeal followed.

## II. Analysis
### A. Offenses Immunized by RSA 318-B:28-b

The defendant first argues that the statutory immunity afforded by RSA 318-B:28-b applies to all crimes enumerated in RSA 318-B:2 with "possession" as an inherent element. He asserts that the statute is ambiguous, and the legislative history supports his argument that the legislature intended to bring within the statute's scope all crimes with the actus reus of possession, including the offense of possession with intent to sell a controlled drug. We disagree.

The interpretation of a statute presents a question of law, and we therefore review a trial court's interpretation of a statute de novo. State v. Mfataneza, 172 N.H. 166, 169 (2019). When interpreting a statute, we look first to the statutory language and, if possible, construe that language according to its plain and ordinary meaning, in the context of the entire statutory scheme. Id. We neither ignore the statute's language nor add words that the legislature did not include. Id. We are the final arbiters of the legislature's intent as expressed in the words of the statute. Id. Only when the statutory language is ambiguous do we look to the legislative history to aid in our interpretation. See State v. Lathrop, 164 N.H. 468, 470 (2012). Further, we construe provisions of the Criminal Code "according to the fair import of their terms and to promote justice." RSA 625:3, :7 (2016).

In 2015, the legislature added the "Immunity from Liability" statute to the Controlled Drug Act. RSA 318-B:28-b; see Laws 2015, 218:2. As relevant here, the statute protects a person who "is experiencing a drug overdose" and "is the subject of a good faith request for medical assistance." RSA 318-B:28-b, III. The statute prohibits such a person from being "arrested, prosecuted, or convicted for possessing, or having under his or her control, a controlled drug in violation of RSA 318-B:2, if the evidence for the charge was gained as a proximate result of the request for medical assistance." Id.

RSA 318-B:2, I, makes it unlawful for a person to, among other things, "manufacture, possess, have under his control, sell, purchase, prescribe, administer, or transport or possess with intent to sell . . . any controlled drug."[2] (Emphases added.) The language in RSA 318-B:2, I, indicates that

_____

[2]Other parts of RSA 318-B:2 make it unlawful for a person to commit other offenses with possession as an actus reus. For example, RSA 318-B:2, II, makes it unlawful for a person to

4

"possess," "have under his control," and "possess with intent to sell" are distinct offenses. See Marcotte v. Timberlane/Hampstead School Dist., 143 N.H. 331, 338-39 (1999) (noting that commas between enumerated elements and before the conjunction "and" generally indicate discrete elements); see also State v. Stiles, 128 N.H. 81, 88 (1986) (treating possession of a controlled drug and possession with intent to sell a controlled drug as discrete offenses). The immunity statute explicitly references two offenses found in RSA 318-B:2: "possessing" and "having under his or her control." RSA 318-B:28-b, II, III. The alignment between the two offenses listed in the immunity statute and their enumeration as discrete offenses in RSA 318-B:2, I, demonstrate that the legislature intended the immunity's scope to encompass only the offenses of "possessing" and "having under his or her control."

Thus, although possession is a component of the offense of possession with intent to sell, the statutory language is not ambiguous and does not support the defendant's broad reading that would extend the immunity to that offense. See Johnson v. City of Laconia, 141 N.H. 379, 380 (1996) (refusing to read "parking lots" into statutory language that explicitly and unambiguously immunizes municipalities from liability for injuries sustained on "public highways, bridges, or sidewalks," despite acknowledging that parking lots and the enumerated areas may be "functionally related"). If the legislature desired the immunity to apply to other offenses involving possession, it would have explicitly listed them in the statute. We will not add an offense to the statute that the legislature did not include. See id. Because the statutory language is unambiguous, we need not look to the legislative history to aid in our interpretation. Accordingly, we conclude that the immunity statute does not extend to the offense of possession with intent to sell a controlled drug.

We recognize, from the immunity statute's language, a legislative intent to encourage those experiencing, or witnessing someone experiencing, an overdose to request medical assistance in order to save the lives of overdose victims. The defendant argues that our interpretation frustrates this intent because individuals, unsure of whether the State will charge them with an offense to which the immunity statute applies, will be discouraged from calling for medical assistance during an overdose. As the defendant acknowledges, however, the statute's language does not indicate an intent to preclude all law enforcement pursuit of possible charges stemming from an overdose in favor of encouraging calls for medical assistance. If such were the case, the legislature would have provided blanket immunity from arrest, prosecution, and conviction for any criminal charges resulting from a good faith request for medical assistance during an overdose.

Instead, the legislature immunized two discrete offenses, as discussed above, and the statute expressly provides that it should not be construed to

---

"possess with intent to deliver . . . drug paraphernalia" under certain conditions.

limit: (a) "the admissibility of evidence in connection with the investigation or prosecution of a crime involving a person who is not protected as provided in paragraphs II or III"; (b) "the lawful seizure of any evidence or contraband"; or (c) "the authority of a law enforcement officer to detain . . . a person as part of a criminal investigation, or to arrest a person for an offense not protected by the provisions of paragraphs II or III." RSA 318-B:28-b, IV. Thus, the statutory language balances the legislative goal to encourage calls for medical assistance with law enforcement interests in investigating other crimes by immunizing certain offenses while allowing others to be investigated and prosecuted. Our interpretation accords with the balance struck by the legislature.

## B. Required Waiver of the Immunity Statute

We next consider the defendant's argument that the trial court erred by requiring him to waive the immunity provided by RSA 318-B:28-b before instructing the jury on the offense of possession. For the reasons that follow, we conclude that when: (1) a defendant is tried on the offense of possession of a controlled drug with intent to sell; (2) instructing the jury on the lesser included offense of possession of a controlled drug is appropriate; and (3) RSA 318-B:28-b applies, then a defendant is entitled to both a jury instruction on possession and the statutory immunity.

This case presents a matter of first impression for this court. While courts in other jurisdictions have yet to resolve this precise issue, they have considered a similar question — whether a defendant who is tried for murder may be required to waive the statute of limitations bar to a manslaughter conviction before the jury is instructed on that lesser included offense. See, e.g., Spaziano v. Florida, 468 U.S. 447, 450, 454 (1984), overruled on other grounds by Hurst v. Florida, 136 S. Ct. 616 (2016); Shelley, 80 N.E.3d at 337; State v. Delisle, 648 A.2d 632, 637 (Vt. 1994); State v. Short, 618 A.2d 316, 318 (N.J. 1993).

Based upon our canvass of these cases, we describe the following three approaches that have emerged. First, the United States Supreme Court and the Massachusetts Supreme Judicial Court have held that the Federal and Massachusetts Constitutions, respectively, are not offended when a defendant is made to choose between: (a) preserving the statute of limitations bar to a manslaughter conviction with no jury instruction on that offense; or (b) waiving the statute of limitations and receiving the manslaughter instruction. Spaziano, 468 U.S. at 454-57; Shelley, 80 N.E.3d at 337-40. Second, the New Jersey Supreme Court has held that a defendant must receive the benefit of both a jury instruction on manslaughter and the statute of limitations bar to a conviction on that offense because courts may not "unilaterally nullify" the legislature's decision to enact a statute of limitations. Short, 618 A.2d at 319-21; see State v. Muentner, 406 N.W.2d 415, 417-20 (Wis. 1987) (holding that the jury must be instructed on the lesser included, time-barred offense of

6

manslaughter, and that if the defendant is found guilty of that offense the trial court may not enter a judgment of conviction).  Third, the Vermont Supreme Court, taking what we perceive to be a middle path, has held that a defendant must elect between: (a) preserving the statute of limitations bar to a manslaughter conviction and forgoing the manslaughter instruction; or (b) receiving the manslaughter instruction coupled with an instruction that, because of the statute of limitations, the jury must acquit the defendant if it finds that he or she committed manslaughter.  Delisle, 648 A.2d at 634.[3]  Under the circumstances in this case, we believe that the New Jersey approach is consistent with our jurisprudence.

The defendant frames his argument in terms of statutory interpretation, asserting that nothing in RSA 318-B:28-b authorized the trial court to require him to waive the immunity before instructing the jury on possession.  The State, on the other hand, relying on Spaziano, 468 U.S. at 455, and Shelley, 80 N.E.3d at 338-39, frames its argument in terms of State and Federal due process, see N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV, asserting that neither required the trial court to instruct the jury on an offense for which the defendant could not be convicted.  We agree with the defendant that our resolution of this issue is compelled by RSA 318-B:28-b's language.

As explained above, we review a trial court's interpretation of a statute de novo.  Mfataneza, 172 N.H. at 169.  We look first to the statutory language and, if possible, construe that language according to its plain and ordinary meaning, in the context of the entire statutory scheme.  Id.  We neither ignore nor add to the statute's language.  Id.

The immunity afforded by RSA 318-B:28-b explicitly applies to the offense of "possessing . . . a controlled drug."  RSA 318-B:28-b, II, III; see RSA 318-B:2, I.  The immunity itself is stated as a simple command: a person who falls within the statute's ambit "shall not be arrested, prosecuted, or convicted."  RSA 318-B:28-b, II, III (emphasis added).  Once the jury found that the defendant had committed the offense of possessing a controlled drug, the statutory language prohibited him from being convicted of that offense.  See Short, 618 A.2d at 319-20 (concluding that statutes of limitations are "binding on the courts" and bar the conviction of a defendant whom the jury finds guilty of a lesser included and time-barred offense).  Nothing in RSA 318-B:28-b's language suggests that the immunity does not apply to a defendant who is charged with possession with intent to sell, but whom the jury finds guilty of only possession after it is instructed on that lesser included offense.

---

[3]Both the New Jersey Supreme Court and Massachusetts Supreme Judicial Court rejected the Vermont approach.  Short, 618 A.2d at 321-24 (reasoning that "telling the jury that [the] defendant would go free if convicted of manslaughter . . . all but invite[s] the jury to disregard the manslaughter instruction"); Shelley, 80 N.E.3d at 340 (agreeing with Short's reasoning in rejecting this approach).

There is a long tradition in New Hampshire of affording the jury the opportunity to return a guilty verdict on a lesser included offense. See State v. Nelson, 8 N.H. 163, 164-65 (1835) (noting that where a defendant is acquitted of a greater offense, he may be convicted of a lesser offense "necessarily involved in the description of such higher offence"), overruled on other grounds by State v. Snyder, 50 N.H. 150 (1870). Thus, we have recognized that, "[i]n general, a defendant charged with one offense is entitled to have the jury consider any lesser included offenses." State v. Soto, 162 N.H. 708, 718 (2011). Instructing the jury on a lesser included offense can benefit the State, by providing the jury a crime of which to find the defendant guilty if the State fails to establish proof of an element of the crime charged, as well as the defendant, by "afford[ing] the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." Beck v. Alabama, 447 U.S. 625, 633 (1980). A lesser included instruction therefore "ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." Id. at 634.

The legislature could have explicitly excepted from the immunity provided by RSA 318-B:28-b, II and III, a defendant who exercises the entitlement to a lesser included instruction on possession and whom the jury finds guilty of that offense. We will not read such an exception into the statute. See State v. Buckingham, 121 N.H. 339, 343 (1981) (refusing to read into a statute the authority for the trial court to punish a defendant by suspending or revoking his driver's license when such authority was not specifically provided for in the statute). We therefore conclude that RSA 318-B:28-b's language does not authorize a trial court to require that a defendant waive the statute's immunity before it instructs the jury on the offense of possession.

The trial court concluded that the defendant could be made to waive the immunity before it instructed the jury on possession primarily because it found that the rationality of the jury process would be compromised if it instructed the jury on an offense for which the defendant could not be convicted. The State's argument before us largely echoes this reasoning. These concerns form the basis of the Massachusetts Supreme Judicial Court's decision in Shelley, 80 N.E.3d at 338, which closely followed the reasoning of the United States Supreme Court in Spaziano, 468 U.S. 447.

In Spaziano, 468 U.S. at 456-57, the Court, in part, concluded that the Federal Constitution was not violated when the trial court in a capital murder trial required the defendant to elect between forgoing an instruction on the lesser included offense of manslaughter, which was barred by the statute of limitations, or waiving the statute of limitations and receiving the manslaughter instruction. According to the Court, "[r]equiring that the jury be instructed on lesser included offenses for which the defendant may not be convicted" distorts the jury's fact-finding mission. Id. at 455-56. Furthermore,

8

it found that "the public's confidence in the criminal justice system" would be undermined if the jury was "tricked into believing that it has a choice of crimes for which to find the defendant guilty, if in reality there is no choice." Id. at 456. The Massachusetts Supreme Judicial Court agreed, concluding that the Massachusetts Constitution "does not require a judge to deceive the jury by instructing [it] on a lesser included offense for which the defendant cannot be found guilty." Shelley, 80 N.E.3d at 338-39. We do not find this reasoning persuasive.

The role of the jury in New Hampshire is to determine whether the State has met its burden of factually proving that a defendant is responsible for committing the charged crime or a lesser included offense, see State v. Melcher, 140 N.H. 823, 831 (1996); Pierce v. State, 13 N.H. 536, 551 (1843), without considering the legal effects of its verdict, see State v. Tetrault, 78 N.H. 14, 16 (1915) ("The jury [has] no duty to perform in the assessment of the penalty and therefore no occasion to know what it might be.").[4] Accordingly, we do not approve of the approach adopted by the Vermont Supreme Court in Delisle, 648 A.2d at 634, because the jury's determination of the facts should not be clouded by irrelevant considerations of the defendant's possible punishment. See Tetrault, 78 N.H. at 16. For example, the jury in this case was instructed that "[t]he possible punishment the Defendant may receive if you return a guilty verdict should not influence your decision. . . . During your deliberations you should consider only the evidence presented at trial."[5] We therefore decline to adopt the reasoning of the United States Supreme Court that the rationality of the jury process is undermined when a jury is instructed on a lesser included offense "[w]here no [such] offense exists." Spaziano, 468 U.S. at 455. In New Hampshire, the lesser offense exists if the State proves, beyond a reasonable doubt, the elements of the lesser offense, but fails to prove the elements of the greater offense. See Soto, 162 N.H. at 718; see also Muentner, 406 N.W.2d at 423 (noting that in Wisconsin the running of the statute of limitations "does not mean the offense ceases to exist," because the jury "may still find, as a matter of facts, that a defendant is guilty of the offense").

---

[4] One exception to the rule that the jury should not consider the defendant's punishment is when a defendant invokes the insanity defense: "[A] jury charged with ascertaining a defendant's sanity should be instructed about consequences of a 'not guilty by reason of insanity' verdict because such consequences are not commonly known." State v. Blair, 143 N.H. 669, 672 (1999).

[5] In Florida, on the other hand, the jury may be told the "penalty of the offense for which the accused is being charged." Fla. Stat. Ann. 918.10(1) (West 2019). Were the same true in New Hampshire, perhaps the Court's concerns in Spaziano, 468 U.S. at 456, about tricking the jury would be more relevant. See Short, 618 A.2d at 322 (distinguishing Spaziano because juries in New Jersey "do not consider the punishments attendant to offenses in deciding guilt or innocence"); Shelley, 80 N.E.3d at 344 n.8 (Budd, J., dissenting) (noting that if the jury was "informed of the sentencing consequences of a guilty verdict," but the conviction was dismissed "due to the statute of limitations, that truly would be tricking the jury").

The jury fulfills its role by judging the evidence and determining whether the elements of the crime were met. See Melcher, 140 N.H. at 831; see also Muentner, 406 N.W.2d at 423. The legislature's determination that the defendant cannot be convicted of one offense for which the jury could rationally find the defendant guilty is of no import to the jury's fact-finding duty. See Tetrault, 78 N.H. at 16. Indeed, whether a trial court instructs the jury on a lesser included offense requires an inquiry into: (1) whether the lesser offense is embraced within the definition of the greater offense; and (2) whether the evidence at trial provides a rational basis for a finding of guilt on the lesser offense. Soto, 162 N.H. at 718. The second prong of that inquiry focusses on whether the jury could rationally find the defendant guilty of the lesser offense based upon the evidence at trial, not on whether the defendant's conviction of that offense is prohibited by the operation of a statute such as RSA 318-B:28-b. See id.; see also Muentner, 406 N.W.2d at 421.

Thus, determining what crime the defendant is factually guilty of committing is, in a jury trial, the prerogative of the jury. Pierce, 13 N.H. at 551. In New Hampshire, that determination is separate and divorced from determining what conviction may legally be entered and what punishment may legally be dispensed, the prerogatives of the legislature and courts. See, e.g., RSA 318-B:26 (Supp. 2019) (setting punishments for various drug offenses); State v. Hancock, 156 N.H. 301, 305 (2007) ("[A] trial court has broad discretion in sentencing."). Similarly, whether the evidence at trial supports instructing the jury on the lesser included offense of possession is a separate question from whether the defendant "shall not be . . . convicted" of possession by operation of RSA 318-B:28-b, II and III. See Muentner, 406 N.W.2d at 420 ("Whether a defendant is entitled to a lesser included offense instruction and whether the statute of limitations has run on a crime are two separate questions."). In the appropriate circumstances, such as those present here, a defendant is entitled to the benefit of both the lesser included instruction and the statutory immunity.

Nothing in LaPlante, 117 N.H. 417, on which the State relies, requires a different result. There, the defendant was charged with attempted murder and requested a jury instruction on the purportedly lesser included offense of "attempted manslaughter," of which he was convicted. Id. at 417. On appeal, he argued that his conviction must be reversed because "'attempted manslaughter' is a logical impossibility." Id. The defendant thus took inconsistent positions in the trial court and on appeal. See id. We therefore concluded that, having requested the lesser included instruction without objecting to its logical impossibility, the defendant could not take issue with that instruction on appeal. Id. at 418. Here, on the other hand, the defendant made the same argument to the trial court as he makes on appeal: that RSA 318-B:28-b does not require him to waive its immunity before the trial court instructed the jury on possession. We therefore find LaPlante unavailing.

10

We conclude that the trial court erred by requiring the defendant to waive RSA 318-B:28-b's immunity before it instructed the jury on the offense of possession. The State does not dispute that possession is a lesser included offense of possession with intent to sell or that RSA 318-B:28-b otherwise applies to the defendant. We therefore vacate the defendant's conviction of possession of a controlled drug.

### C. Warrantless Entry into the Defendant's Apartment

Finally, we turn to the defendant's argument that the trial court erred in denying his motion to suppress evidence. He asserts that the police officers' initial warrantless entry into his apartment violated his right to be free from unreasonable searches under Part I, Article 19 of the State Constitution and the Fourth Amendment to the Federal Constitution. We first address the defendant's claim under the State Constitution, and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

The trial court concluded that the officers' initial entry into the apartment was justified by the emergency aid exception to the warrant requirement. When reviewing a trial court's determination that a warrantless search was justified under this exception, we accept its factual findings unless they are unsupported by the record or clearly erroneous. See State v. MacElman, 149 N.H. 795, 797 (2003). We review its legal conclusion regarding whether the warrantless search fell within the exception de novo. See id.

Part I, Article 19 of the New Hampshire Constitution requires that all searches be reasonable. Ball, 124 N.H. at 234. A warrantless search is per se unreasonable and thus unconstitutional unless it falls within a judicially crafted and narrow exception to the warrant requirement. See State v. Robinson, 158 N.H. 792, 797 (2009). "The search of a home is subject to a particularly stringent warrant requirement because the occupant has a high expectation of privacy." Id. The State bears the burden of proving by a preponderance of the evidence that a warrantless search fell within such an exception. Id.

The emergency aid exception to the warrant requirement applies when police officers enter a residence without a warrant because, performing duties unrelated to the investigation of a crime, their services appear immediately necessary to protect life or property. See MacElman, 149 N.H. at 798; see also Sutterfield v. City of Milwaukee, 751 F.3d 542, 557 (7th Cir. 2014). To justify a warrantless entry under this exception, the State must show that: (1) the police have objectively reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) there is an objectively reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched; and (3)

11

the search is not primarily motivated by an intent to arrest and seize evidence. MacElman, 149 N.H. at 798. Whether a warrantless entry into a home was justified by the emergency aid exception depends on the particular circumstances surrounding the entry. See State v. Pseudae, 154 N.H. 196, 201-02 (2006); see also Sutterfield, 751 F.3d at 557.

The defendant concedes that an emergency existed. However, he argues that the State failed to establish, under the first prong of the analysis, that the police had objectively reasonable grounds to believe there was an immediate need for their assistance to protect his life because the members of the Concord Fire Department, who carried Narcan and provided him medical treatment, arrived at the apartment at the same time as the first officer. The defendant's argument, however, asks us to view the officers' entry in light of circumstances that became apparent after the emergency subsided, i.e., that the officers were not called upon to render medical assistance. The first prong of our analysis focuses not on the actual assistance rendered or, in this case, not rendered by the officers, but on their objective beliefs regarding the immediate need for their assistance. See MacElman, 149 N.H. at 798.

The officers who initially responded to the defendant's apartment were notified that he was unconscious, not breathing, "turning purple," and suspected to have overdosed. The officers could have reasonably believed that their assistance would be necessary to save the defendant's life, for example by assisting in providing cardiopulmonary resuscitation, even though medical personnel were also on scene. See, e.g., Plummer v. District of Columbia, 317 F. Supp. 3d 50, 63 (D.D.C. 2018) (concluding that the police justifiably entered a garage without a warrant after medical services had arrived to "ensure that [an unresponsive individual] received prompt medical evaluation and possible treatment"); People v. Amato, 562 P.2d 422, 423-24 (Colo. 1977) (holding that the police validly entered a residence without a warrant in response to a "possible overdose" call despite the fact that medical personnel had already arrived); cf. Bray v. State, 597 S.W.2d 763, 768 (Tex. Crim. App. 1980) (warrantless entry not valid when officers knew that defendant was no longer "in any serious distress").

The defendant also argues, under the third prong of the analysis, that the officers were primarily motivated by an intent to seek evidence of a crime because they "had nothing to offer in terms of resolving the medical emergency." As the trial court found, however, when the initial officers arrived they "had no reason to believe that emergency assistance was no longer required or that the emergency had been resolved." That the police officers did not in fact provide any medical treatment does not reveal a primary motivation to enter the apartment in order to seek evidence of a crime.

Accordingly, we conclude that the officers' initial entry into the defendant's apartment was justified under the emergency aid exception to the

warrant requirement.  The Federal Constitution provides the defendant no greater protection under these circumstances, see Brigham City v. Stuart, 547 U.S. 398, 406-07 (2006); Michigan v. Fisher, 558 U.S. 45, 48-49 (2009), and we therefore reach the same result under the Federal Constitution as we do under the State Constitution.

## III. Conclusion

For the reasons stated above, we vacate the defendant's conviction for possession of a controlled drug.  We affirm the defendant's conviction for being a felon in possession of a firearm.  We consider waived any issues that the defendant raised in his notice of appeal, but did not brief.  See State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed in part and vacated in part.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.