[950 NE2d 908, 927 NYS2d 304]

MARGARET GRONINGER, Appellant, v VILLAGE OF MAMARONECK, Respondent.

Argued April 28, 2011; decided June 2, 2011

**POINTS OF COUNSEL**

*Arnold E. DiJoseph, P.C.*, New York City (*Arnold E. DiJoseph, III*, of counsel), and *Michael A. Barnett*, for appellant. The Appellate Division committed clear error by neither considering nor adhering to this Court's holding in *Walker v Town of Hempstead* (84 NY2d 360 [1994]) with respect to any case involving a public parking lot, parking field or parking garage owned or operated by a municipal entity. (*Stratton v City of Beacon*, 91 AD2d 1018; *Doherty v Town of Clarkstown*, 233 AD2d 477; *Lauria v City of New Rochelle*, 225 AD2d 1013; *Healy v City of Tonawanda*, 234 AD2d 982; *Tuzzolo v Town of Hempstead*, 292 AD2d 446; *Peters v City of White Plains*, 58 AD3d 824; *Mendes v Whitney-Floral Realty Corp.*, 216 AD2d 540; *Englehardt v Town of Hempstead*, 141 AD2d 601; *Fitzpatrick v Barone*, 215 AD2d 351; *Mountain View Coach Lines v Storms*, 102 AD2d 663.)

*Morris Duffy Alonso & Faley*, New York City (*Anna J. Ervolina* and *Kenneth E. Pitcoff* of counsel), for respondent. The dismissal of plaintiff's complaint should be affirmed because municipal parking lots are subject to the prior written notice requirements. (*Amabile v City of Buffalo*, 93 NY2d 471; *Yarborough v City of New York*, 10 NY3d 726; *Wohlars v Town of Islip*, 71 AD3d 1007; *Staudinger v Village of Granville*, 304 AD2d 929; *Healy v City of Tonawanda*, 234 AD2d 982; *Walker v Town of Hempstead*, 84 NY2d 360; *Woodson v City of New York*, 93

NY2d 936; *People v County of Westchester*, 282 NY 224; *People v Thew*, 44 NY2d 681; *People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs.*, 174 NY 417.)

## OPINION OF THE COURT

Pigott, J.

Plaintiff commenced this personal injury action against the Village of Mamaroneck after she slipped and fell on ice in a parking lot owned and maintained by the Village. The Village moved for summary judgment dismissing the complaint, asserting that it had neither received prior written notice of the defect (*see* CPLR 9804; Village Law § 6-628) nor created the icy condition. Plaintiff opposed the motion, asserting, as relevant to this appeal, that the written notice requirement does not apply to publicly-owned parking lots.

Supreme Court granted the Village's motion and the Appellate Division affirmed, rejecting plaintiff's contention, and holding that the Village met its burden of demonstrating that it had not received such notice (67 AD3d 733 [2d Dept 2009]). The court further held that plaintiff failed to meet her burden of showing that either exception to the written notice requirement applied (*id.* at 734) and certified to this Court the question of whether its decision and order was properly made.

Village Law § 6-628, which is nearly identical to CPLR 9804, provides, in pertinent part, that

> "[n]o civil action shall be maintained against the village . . . for damages or injuries to person or property sustained solely in consequence of the existence of snow or ice upon any sidewalk, crosswalk, street, highway, bridge or culvert unless written notice of the defective, unsafe, dangerous or obstructed condition or of the existence of the snow or ice, relating to the particular place, was actually given to the village clerk and there was a failure or neglect within a reasonable time after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or to cause the snow or ice to be removed, or the place otherwise made reasonably safe."

Such notice is obviated where the plaintiff demonstrates that the municipality "created the defect or hazard through an affirmative act of negligence" or that a "special use" conferred a

benefit on the municipality (*Amabile v City of Buffalo*, 93 NY2d 471, 474 [1999]).

Plaintiff, relying on our holding in *Walker v Town of Hempstead* (84 NY2d 360 [1994]), argues that because a publicly-owned parking lot does not fall within any of the six specifically enumerated locations in the written notice statutes, it is not subject to the written notice requirement. We reject this argument and affirm the Appellate Division's order.

In *Walker*, the plaintiff brought a negligence action against the town for injuries he sustained on a municipal paddleball court in the town's "beach area" (84 NY2d at 364). The town code required prior written notice of defects existing in, among other things, "parking field[s]," "beach area[s]" and "playground equipment" (*Walker*, 84 NY2d at 364 n 1). This Court concluded that the town's written notice requirement ran afoul of General Municipal Law § 50-e (4)'s directive that "[n]o other or further notice . . . shall be required" concerning defects on municipal property that fall outside the statutorily delineated locations (i.e., sidewalk, crosswalk, street, highway, bridge or culvert). In reaching that conclusion, we stated that "we can only construe the Legislature's enumeration of six, specific locations in the exception . . . as evincing an intent to exclude any others not mentioned" and therefore constituting "a prohibition of any notice of defect enactment pertaining to locations beyond the six specified," meaning that the town could not rely on the lack of prior written notice as a defense to a paddleball court accident (*Walker*, 84 NY2d at 367-368 [citation omitted]). It is this last point of law upon which plaintiff relies in asserting that, because a publicly-owned parking lot is not listed as one of the locations in which defects require prior written notice, such notice was not a condition precedent to suit.

For nearly 30 years, the courts of this state have consistently found that a publicly-owned parking lot falls within the definition of a "highway" and therefore prior notice of defect is required (*see e.g. Peters v City of White Plains*, 58 AD3d 824, 825 [2d Dept 2009]; *Walker v Incorporated Vil. of Freeport*, 52 AD3d 697, 697 [2d Dept 2008]; *Healy v City of Tonawanda*, 234 AD2d 982, 982 [4th Dept 1996]; *Lauria v City of New Rochelle*, 225 AD2d 1013, 1013-1014 [3d Dept 1996]; *Stratton v City of Beacon*, 91 AD2d 1018, 1019 [2d Dept 1983]).

Plaintiff asserts that the post-*Walker* cases directly conflict with our statement in *Walker* that the town's local law requiring prior written notice as to "parking field[s]" and "beach ar-

ea[s]" was "flatly inconsistent with" General Municipal Law § 50-e (4)'s plain language excluding the written notice requirement for locations outside the delineated six (*Walker*, 84 NY2d at 366). That argument ignores our holding in the post-*Walker* decision *Woodson v City of New York* (93 NY2d 936 [1999]).

In *Woodson*, the plaintiff sued for injuries arising out of his fall on a stairway that led from a sidewalk to a municipal park. This Court rejected the plaintiff's assertion that prior written notice of the defect was not a prerequisite to suit because a "stairway" was not listed as one of the six named locations in the statute. Specifically, this Court noted that the Administrative Code of the City of New York's definition of "sidewalk" included the term "stairway," and concluded that the Administrative Code's notice requirement did not run afoul of General Municipal Law § 50-e (4) because a stairway "functionally fulfills the same purpose" as a standard sidewalk, save for the fact that the former is "vertical instead of horizontal" (*Woodson*, 93 NY2d at 937, 938).

The parking lot here serves the "functional purpose" of a "highway," which Vehicle and Traffic Law § 118 broadly defines as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." It was owned and maintained by the Village and was accessible to the general public for vehicular travel. As a result, the Village was entitled to notice and an opportunity to correct any defect before being required to respond to any claim of negligence with respect thereto. This holding recognizes that municipalities, which are "not expected to be cognizant of every crack or defect within [their] borders, will not be held responsible for injury from such defect unless given an opportunity to repair it" (*Gorman v Town of Huntington*, 12 NY3d 275, 279 [2009]).

The Village, through the testimony of its representative, met its burden of establishing that it did not receive prior written notice of the icy condition, thereby shifting to plaintiff the burden of demonstrating either that a question of fact existed in that regard or that one of the *Amabile* exceptions applied. Plaintiff never contested the Village's proof that it had not received prior written notice of the defect, asserting, instead, that such notice was unnecessary. Moreover, plaintiff never raised the "special benefit" exception and, to the extent that plaintiff contends that the Village's snow removal operations created the icy condition that caused plaintiff to fall (*see San*

*Marco v Village/Town of Mount Kisco*, 16 NY3d 111, 118 [2010]), the Appellate Division properly concluded that the opinion of plaintiff's expert engineer was speculative, as it was premised on an inspection conducted, and photographs taken, of the parking lot over two years after plaintiff's fall.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question should not be answered upon the ground that it is unnecessary.

Chief Judge LIPPMAN (dissenting). In *Walker v Town of Hempstead* (84 NY2d 360 [1994]), this Court, after extensive briefing[1] and careful consideration, unanimously decided that the Town of Hempstead's supersession powers did not permit its enactment of a Town Code provision imposing a prior-notice-of-defect requirement for actions seeking damages sustained by reason of "any defective parking field, beach area, swimming or wading pool or pool equipment, playground or playground equipment, skating rink or park property" (Town of Hempstead Code § 6-2). To decide the case as it did, the Court necessarily addressed two principal issues: (1) whether section 6-2 was inconsistent with state law enumerating the locations to which prior notice requirements could apply (i.e., General Municipal Law § 50-e [4]);[2] and (2) whether parts of the subject Code provision inconsistent with state law were nonetheless permissibly enacted by the Town in the exercise of its supersession authority under section 10 of the Municipal Home Rule Law—an inquiry turning upon whether a provision in addition to being inconsistent was expressly prohibited by state law (*see Kamhi v Town of Yorktown*, 74 NY2d 423, 429-430 [1989]). Only if a local enactment is expressly prohibited by state law, is the locality's supersession authority exceeded.

---

**1.** In addition to the parties' briefs, there were lengthy amici submissions by the New York State Conference of Mayors and Municipal Officials and the New York State Trial Lawyers Association.

**2.** That statute, the focus of the ensuing discussion, provides in relevant part:

> "No other or further notice, no other or further service, filing or delivery of the notice of claim, and no notice of intention to commence an action or special proceeding, shall be required as a condition to the commencement of an action or special proceeding for the enforcement of the claim; provided, however, that nothing herein contained shall be deemed to dispense with the requirement of notice of the defective, unsafe, dangerous or obstructed condition of any street, highway, bridge, culvert, sidewalk or crosswalk, or of the existence of snow or ice thereon."

As to the first of these inquiries, we found, as an essential part of our analysis, that

> "Town of Hempstead Code § 6-2 is in fact inconsistent with General Municipal Law § 50-e (4). The local law—to the extent that it requires prior notice of defect for accidents at a Town *'parking field,* beach area',* etc., as a condition precedent to the commencement of an action against the Town—is *flatly inconsistent with the plain language of section 50-e (4)* mandating that '[n]o other or further notice . . . shall be required as a condition to the commencement of an action', subject to an exception for notices of defect for six specific kinds of locations, none of which is applicable here" (*Walker*, 84 NY2d at 366 [emphasis supplied]).

We explained that this conclusion was compelled by the canons of statutory construction:

> "we can only construe the Legislature's enumeration of six, specific locations in the exception (i.e., streets, highways, bridges, culverts, sidewalks or crosswalks) as evincing an intent to exclude any others not mentioned (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 240 ['where a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned'])" (*id.* at 367).

With respect to the second step of the analysis, necessitated by our finding that the challenged Town Code notice provision was inconsistent with General Municipal Law § 50-e (4), we found

> "the conclusion inescapable . . . that General Municipal Law § 50-e (4) . . . does indeed contain an express prohibition against the adoption of the provisions of Hempstead Code § 6-2 requiring prior notice of defects at municipal locations other than the enumerated streets, highways, bridges, culverts, sidewalks or crosswalks. This express prohibition precludes the exercise of the Town's supersession authority" (*id.* at 367-368).

We observed in this connection that,

> "General Municipal Law § 50-e (4) contains clear,

prohibitory language strictly limiting deviations from the notice requirements specifically set forth in that section, excepting only notice of defect provisions pertaining to the six enumerated locations. The statute does not merely omit a grant of authority to localities to require notice of defect at locations beyond the six specified (*cf., Kamhi v Town of Yorktown, supra*), but rather in unmistakable terms provides that '[n]o other or further notice . . . shall be required' beyond those permitted by its terms. The statute must be construed, therefore, as a flat prohibition not only of the Town's enactment of any notice of claim provision other than that provided for in the statute, but also a prohibition of *any* notice of defect enactment pertaining to locations beyond the six specified" (*id.* at 368 [emphasis supplied]).

Obviously, *Walker* was not, as the majority suggests, an appeal simply about whether the Town could rely on the lack of prior written notice as a defense to a paddleball court accident. Such a characterization trivializes the appeal's scope of concern and ignores the analysis and findings upon which the Court's particular conclusion—that a town paddleball court was not among the locations to which a prior written notice requirement might apply—was based. We did not merely determine that the Town could not "rely" (majority op at 128) upon a lack of prior notice defense with respect to paddleball courts, but much more fundamentally that the Town had no authority to impose *any* prior notice requirement respecting defects at locations beyond the six specifically enumerated in General Municipal Law § 50-e (4). It was only in light of our construction of General Municipal Law § 50-e (4) as an express prohibition upon the enactment of *any* prior notice requirement other than those the limiting statute specifically allowed, that we concluded as we did respecting the validity of the Town Code provision requiring prior notice of "beach area" defects.[3] Our construction of section 50-e (4) left no doubt as to the invalidity of other portions of Town of Hempstead Code § 6-2, most notably its requirement of prior written notice of "parking field" defects. Indeed, we were explicit that that requirement, like the requirement respecting "beach area" defects, was "flatly inconsistent with" and expressly prohibited by the limiting state statute.

---

**3.** The paddleball court was at a public beach.

Our construction of General Municipal Law § 50-e (4) in *Walker* is entitled to be viewed as authoritative. The majority declines to give it effect, not because after close consideration and attention to the principles of stare decisis it has concluded that the construction is wrong or unworkable—manifestly, it is not—but because the intermediate appellate courts of this State have, in a handful of dubiously reasoned decisions perpetuated the pre-*Walker* notion that a parking lot is a kind of "highway" as to which the prohibition of General Municipal Law § 50-e (4) does not apply. But, of course, we held with great clarity in *Walker* that a "parking field" is not a location within the statute's dispensational enumeration, from which it follows ineluctably that a parking lot cannot be a "highway" within the meaning of section 50-e (4). It is not an impressive ground for a contrary conclusion by this Court that the Appellate Division has persisted in adhering to an utterly inconsistent definitional equation. High regard for the work of the Appellate Division cannot alter the obvious circumstance that it is not in the nature of this Court's role for it to defer to the intermediate appellate courts of this State in a matter of statutory interpretation, particularly when we have carefully and authoritatively construed the governing provision to require a result exactly contrary to the one they have reached.

Only somewhat less dubious as a basis for the Court's decision, is our memorandum in *Woodson v City of New York* (93 NY2d 936 [1999]), in which we allowed that a staircase in a municipal park simply connecting lengths of sidewalk at either of its ends could be understood to be a "sidewalk" within the meaning of General Municipal Law § 50-e (4) and thus permissibly the subject of a locally enacted prior written notice requirement. Key to our decision was our observation that "[t]he stairway in this case functionally fulfills *the same* purpose that a standard sidewalk would serve on flat topography" (*id.* at 938 [emphasis supplied]). Even if it were supposed that we intended in *Woodson* to make a doctrine of functional *equivalence* generally available in discerning the range of reference of section 50-e (4)'s relevant terms—a large enough assumption given our decision in *Walker* construing the statute principally as a limitation on local legislative power—it is inconceivable that *Woodson*'s very narrow holding, that "[t]he stairway in *this* case" (emphasis supplied), i.e., the stairway simply connecting two parts of a sidewalk, was intended to sanction the utterly promiscuous doctrine of functional "equivalence" now employed

under which a parking lot is deemed to be a "highway." Quite apart from the circumstance that our construction of section 50-e (4) in *Walker* was expressly preclusive of such an equivalence, *Woodson*, which never purported to impair *Walker*'s validity, does not by its terms allow it either.

It is so obvious as hardly to merit serious discussion that a parking lot does not fulfill the same function as a "highway." As everyone knows, the dominant purpose of a *parking* lot is to accommodate stationary, i.e., parked, vehicles. By contrast, the precisely opposite dominant purpose of a highway is to enable vehicles to move with a degree of expedition. While a parking lot may be entered and exited by public roads, the two types of facilities are notable for their essentially discontinuous purposes. Completely absent in the relationship between highways and parking facilities is the continuity, indeed virtual identity of purpose, upon which we justified the particular equivalence drawn in *Woodson*. Moreover, in *Woodson* the equivalence, even though not obscure, had been made explicit in section 7-201 of the Administrative Code of the City of New York, whereas here the relied upon, far from evident equivalence does not appear to have been expressly articulated anywhere, raising a profound question as to whether adequate notice of the prior notice requirement was provided.

The extension of the doctrine of functional equivalence to the present facts is not made more viable by the capacious definition of "highway" found in Vehicle and Traffic Law § 118. That definition, although doubtless appropriately employed in construing statutes having to do with highway maintenance and use, was never intended to have relevance in the construction of General Municipal Law § 50-e (4), and, indeed, its superimposition upon the statute is highly problematic. This is not only because it facilitates an equivalence that *Walker* construed section 50-e (4) to prohibit. There are other problems, among them that there would be no need for the statute's enumeration of the six location categories as to which prior notice could be required if the operative definition of "highway" was the virtually all-inclusive one contained in Vehicle and Traffic Law § 118. Nor is the use of the definition in this context compatible with the basic maxim that statutory provisions in derogation of the common law, such as those in section 50-e (4) permitting prior notice requirements as to the six specified, contextually exceptional location types, are to be strictly construed (*see Gorman v Town of Huntington*, 12 NY3d 275, 279 [2009]).

It is true as the majority observes that "municipalities . . . are not expected to be cognizant of every crack or defect within [their] borders" (majority op at 129, quoting *Gorman*, 12 NY3d at 279 [internal quotation marks omitted]), but it does not follow that there can be no crack or defect about which a municipality may be reasonably expected to acquire either actual or constructive notice in the ordinary course of discharging its proprietary responsibilities. The Legislature has quite reasonably permitted localities to enact prior notice requirements relieving themselves of the unusually onerous responsibility of frequently monitoring their ordinarily extensive "street[s], highway[s], bridge[s], culvert[s], sidewalk[s] [and] crosswalk[s]" (General Municipal Law § 50-e [4]). But, as we held in *Walker*, the Legislature has not permitted, and, in fact, has prohibited, a similar dispensation as to parking lots. Even if it were inconsistent, or from a policy perspective questionable, to treat parking lots differently from the statutorily enumerated locations, the scope of the statute's prohibition would not be a matter for judicial adjustment. If it were, though, the case for expanding the scope of General Municipal Law § 50-e's dispensational clause, would not be particularly compelling. Plainly, the statute's omission of parking lots from that clause was entirely reasonable. Municipal parking lots, in distinction to extended road systems, are spatially contained; they may, particularly given the nature and frequency of their use, reasonably be expected to be regularly maintained and monitored by their municipal proprietors. The Legislature could, then, quite sensibly have concluded that, when it came to the parking lots within their borders, municipalities should, like landowners generally, be responsible for premises defects of which they have notice, either actual or constructive.

What is at issue is a legislative policy judgment that we have previously recognized and enforced in a controlling decision. A mere judicial aversion to municipal liability is not a ground upon which either should now be disturbed.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Chief Judge LIPPMAN dissents in a separate opinion in which Judges CIPARICK and JONES concur.

Order affirmed, etc.