*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 2, 2016                    521846
_____

PHILWOLD LLC et al.,

                         Appellants,

        v                                   MEMORANDUM AND ORDER

INERGY LP, Doing Business as
    BURNWELL GAS, et al.,
                         Respondents,
                         et al.,
                         Defendants.
_____

Calendar Date:  April 18, 2016

Before:  Lahtinen, J.P., McCarthy, Garry, Rose and Aarons, JJ.

                         _____


        Whiteman Osterman & Hanna LLP, Albany (Neil L. Levine of
counsel), for appellants.

        Drew, Davidoff & Edwards LLP, Monticello (Michael Davidoff
of counsel), for Inergy LP and others, respondents.

                         _____


McCarthy, J.

        Appeal from an order of the Supreme Court (McGuire, J.),
entered January 13, 2015 in Sullivan County, which, among other
things, granted defendants' motions for summary judgment
dismissing the complaint.

        Plaintiff Philwold LLC is the owner of an insulated, heated
building (hereinafter referred to as the tortoise house) within
which its managing member, plaintiff Stuart Salenger, kept and
maintained a number of tortoises.  The tortoise house served as a
winter residence for the tortoises.  The gas fired, thermostat
controlled heating system used within the tortoise house was
manufactured by defendant Modine Manufacturing Company.

Plaintiffs requested defendants Inergy LP, Inergy Holdings, LP, Burnwell Gas Corporation and Inergy Propane LLC (hereinafter collectively referred to as Inergy) to repair and service the heaters, wiring and thermostats that it had previously installed. Defendant Gary McBride, an employee of Inergy, serviced the heating system at the tortoise house and, upon inspection, determined that the old thermostats did not work due to a roach infestation. When McBride could not resolve the issue with one of the thermostats, he installed a new thermostat (hereinafter the thermostat), which was manufactured by defendant Robertshaw Controls Company. The next morning, an associate of plaintiffs arrived at the tortoise house to find that the temperature in the tortoise house had risen to approximately 110 degrees as a result of the thermostat's malfunction and that, as a further result, 23 tortoises had died and others were injured.

Thereafter, plaintiffs commenced this action alleging, among other things, that Inergy "negligently repaired, and/or furnished and installed heaters and thermostats" within the tortoise house. Specifically, plaintiffs claimed that the thermostat installed by McBride was "defective and failed in its intended purpose[] to control the supply and degree of heat furnished" to plaintiffs' tortoise house and that McBride negligently installed the thermostat.

Inergy and McBride, Robertshaw and Modine each moved for summary judgment dismissing the complaint against them. Supreme Court granted defendants' motions for summary judgment dismissing the complaint in its entirety. In doing so, the court rejected as "illogical" the theory put forth by an expert for plaintiffs — a mechanical engineer with over 50 years of professional experience and approximately 40 years of experience teaching on that subject at the Massachusetts Institute of Technology — that the improper installation of the thermostat caused its malfunction. Plaintiffs appeal and argue that summary judgment dismissing the complaint was improper as to Inergy and McBride (hereinafter collectively referred to as defendants). We agree with plaintiffs and modify to that extent.

Defendants failed to put forth prima facie evidence establishing that there were not material issues of fact as to

whether their negligent installation of the thermostat caused its malfunction. Although defendants put forth certain evidence, including expert evidence, that supported a conclusion that the malfunction occurred as the result of the thermostat becoming infested with cockroaches, their remaining submissions raised questions of fact as to whether negligent installation caused the malfunction. Notably, defendants' submissions established that the thermostat was designed to be mounted through the use of two screws, but McBride testified that he had actually mounted the thermostat through the use of three screws. Further evidence tended to suggest that at least one of the screws used to install the unit was of a different size than those supplied with the thermostat and designed to be used for mounting it. Further, the director of product risk engineering for the parent company of Robertshaw explained that Robertshaw supplied installers with particular screws in order to avoid impediments that could affect the operation of the thermostat. Finally, in describing the type of malfunction that would have had to occur to permit the thermostat to continue to run the heater in the manner that it did, a mechanical engineer opined that there was "some possibility that somehow a current was allowed to flow through the screws or something based on the way it was mounted." Viewing this evidence in the light most favorable to plaintiffs, defendants' submissions failed to eliminate all material issues of fact regarding the theory that improper installation, based on mounting the thermostat with a third unintended screw, caused the thermostat's malfunction. Accordingly, summary judgment should have been denied as to defendants regardless of plaintiffs' opposition papers (see Markel Ins. Co. v Bottini Fuel, 116 AD3d 1143, 1148 [2014]; Cokeng v Ogden Cap Props., LLC, 104 AD3d 550, 550 [2013]).

Even if it were not the case that defendants failed to meet their prima facie burden, plaintiffs' submissions in opposition to summary judgment raised material issues of fact requiring a trial. Namely, plaintiffs provided the expert opinion of Igor Paul, an experienced mechanical engineer and a longtime professor on that topic. Paul opined, to a reasonable degree of scientific certainty, that the improper use of a third, oversized mounting screw — in contravention of the thermostat's intended design and instructions for installation — broke the internal mechanisms of

the thermostat in a manner that allowed it to continue to run the heater despite over-temperature conditions. In reaching this conclusion, Paul relied on, among other things, thermostat models identical to the thermostat, examination of the installation point on the tortoise house wall, installation instructions and other technical materials related to the design of the thermostat, and tests related to mounting exemplars of the thermostat into the three holes present at the installation point of the thermostat. Paul's affidavit provides a detailed explanation of how he reached his conclusion regarding the cause of the thermostat's malfunction based on facts, inferences and reasoning. The affidavit provides a similarly detailed explanation of why Paul found defendants' roach causation theory of malfunction implausible and why his own conclusion was consistent with McBride's failure to discover the damage that he had caused during the installation based on the manner in which he thereafter tested the thermostat. Considering this affidavit, we find that Paul's expert opinion is admissible evidence that raises material issues of fact as to whether defendants' improper installation of the thermostat caused damages to plaintiffs (see O'Brien v Couch, 124 AD3d 975, 977 [2015]; Sutherland v Thering Sales & Serv., Inc., 38 AD3d 967, 968 [2007]). Accordingly, summary judgment should have been denied as to defendants. The remaining issues are either academic or without merit.

Lahtinen, J.P., Garry, Rose and Aarons, JJ., concur.

ORDERED that the order is modified, on the law, with costs to plaintiffs, by reversing so much thereof as granted motions by defendants Inergy LP, Inergy Holdings, LP, Burnwell Gas Corporation, Inergy Propane LLC and Gary McBride for summary judgment dismissing the complaint against them; said motions denied; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court