Gurbanova v City of Ithaca (2025 NY Slip Op 00252)

Gurbanova v City of Ithaca

2025 NY Slip Op 00252

Decided on January 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 16, 2025

CV-23-1669
[*1]Lazifa S. Gurbanova, Individually and as Parent and Guardian of Z.M., an Infant, Appellant,
v
City of Ithaca et al., Respondents, et al., Defendant.

Calendar Date:October 10, 2024

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Mackey, JJ.

Coughlin & Gerhart, LLP, Binghamton (Thomas H. Bouman of counsel), for appellant.
P. David Twichell, Baldwinsville, for respondents.

Ceresia, J.
Appeal from that part of an order of the Supreme Court (Elizabeth Aherne, J.), entered August 7, 2023 in Tompkins County, which granted a motion by defendants City of Ithaca and Ithaca Youth Bureau for summary judgment dismissing the complaint against them.
After plaintiff and her five-year-old child rode bicycles at Cass Park in the City of Ithaca, Tompkins County, they returned to their car, which was parked in a municipal parking lot, and plaintiff began loading the child's bicycle into the car. While she did so, the child grabbed onto a three-foot-high, arch-shaped metal bollard, or barrier, designed to protect the trees in the parking lot from damage by vehicles. As the child swung from the bollard, it dislodged from the ground and fell over, causing injury to the child's hand. Thereafter, plaintiff, individually and as parent of the child, commenced this action against defendants City of Ithaca and Ithaca Youth Bureau (hereinafter defendants), alleging that they negligently caused the child's injury.[FN1] Following joinder of issue and discovery, defendants moved for summary judgment, arguing, as relevant here, that there was no actionable claim due to a lack of prior written notice. Plaintiff opposed, contending that the City's prior written notice statute was inapplicable and, in the alternative, that an exception to the prior written notice rule should govern because defendants affirmatively created a dangerous condition. Supreme Court granted the motion, finding that the prior written notice rule did apply, that such notice was not provided and that plaintiff failed to show the applicability of an exception. Plaintiff appeals, and we affirm.
"Where, as here, a municipality has enacted a prior written notice provision (see [City of Ithaca Charter § C-107]), a plaintiff may not bring a civil action against the municipality for damages as the result of an injury sustained by reason of a defective street, highway, bridge, culvert, sidewalk or crosswalk unless prior written notice of the allegedly defective condition has been given" (Cieszynski v Town of Clifton Park, 124 AD3d 1039, 1040 [3d Dept 2015] [internal quotation marks, brackets and citations omitted]; see General Municipal Law § 50-e [4]; Calabrese v City of Albany, 221 AD3d 1152, 1152 [3d Dept 2023], affd ___ NY3d ___ [Dec. 17, 2024]). Municipal parking lots, such as the one where the instant accident occurred, are considered highways in this context (see Groninger v Village of Mamaroneck, 17 NY3d 125, 128 [2011]; Serba v Town of Glenville, 223 AD3d 1007, 1008 [3d Dept 2024]).[FN2]
In accordance with longstanding precedent from both the Court of Appeals and this Department, we note that the law is well settled that defendants, as the movants, bore the initial burden of establishing that they did not receive prior written notice of the alleged dangerous condition and that, upon such a showing, the burden then shifted to plaintiff to establish a triable issue of fact as to notice or that [*2]an exception to the notice requirement applied (see Groninger v Village of Mamaroneck, 17 NY3d at 129; Pellett v Town of Milton, 228 AD3d 1157, 1158-59 [3d Dept 2024]; Pfirman v Village of New Paltz, 228 AD3d 1098, 1098 [3d Dept 2024]; Vnuk v City of Albany, 191 AD3d 1056, 1058 [3d Dept 2021], lv denied 37 NY3d 909 [2021]; Boice v City of Kingston, 60 AD3d 1140, 1141 [3d Dept 2009]). In support of their motion, defendants submitted an affidavit from the City Clerk, who averred that no written notice of the condition of the bollard was ever received prior to the child's accident. Defendants also provided the depositions of several City employees, each of whom indicated that they were not made aware of any complaints about the bollards prior to the accident. Additionally, a former City forester testified at a deposition that he inspected the bollards in the parking lot once they were installed, and then annually for a period of time thereafter, and they were not loose or otherwise deficient. Given that this proof demonstrated the absence of prior written notice, defendants met their prima facie burden of establishing entitlement to judgment as a matter of law (see Harvish v City of Saratoga Springs, 172 AD3d 1503, 1503-1504 [3d Dept 2019]).
Consequently, the burden shifted to plaintiff to identify a question of fact as to whether defendants received prior written notice or as to the applicability of an exception to the rule mandating such notice (see Harvish v City of Saratoga Springs, 172 AD3d at 1504; Cornish v City of Ithaca, 149 AD3d 1321, 1323 [3d Dept 2017]). Plaintiff did not dispute that defendants lacked prior written notice but, instead, argued that the rule should not apply in this case. That is, plaintiff attempted to draw a distinction between surface defects and tripping hazards affecting safe passage as being the types of conditions that require notice, as opposed to objects installed on the ground by the municipality itself — such as the bollard here — which purportedly do not require notice. We are unpersuaded. To begin with, recognizing that the claimed defective condition concerned the adequacy of the asphalt to securely hold the bollard that was attached to it, it is a surface defect that plaintiff has, in essence, alleged. In any event, the operative query is not whether there is a surface defect affecting safe passage but, more broadly, whether there is a defective condition that would not have come to the municipality's attention unless it was notified of it (see Hughes v Jahoda, 75 NY2d 881, 883 [1990]; Doremus v Incorporated Vil. of Lynbrook, 18 NY2d 362, 366 [1966]). As such, the prior written notice rule has been applied to conditions as varied as a low-hanging tree branch (see Monteleone v Incorporated Vil. of Floral Park, 74 NY2d 917, 918 [1989]), a loose guardrail (see Ferreira v County of Orange, 34 AD3d 724, 725 [2d Dept 2006]), a sharp metal beam (see Bang v Town of Smithtown, 291 AD2d 516, 517 [2d Dept 2002], lv denied [*3]98 NY2d 665 [2002]) and a bent parking meter pole (see Fein v City of Long Beach, 123 AD2d 662, 662 [2d Dept 1986], lv denied 69 NY2d 606 [1987]). Therefore, the prior written notice rule governs.
In the alternative, plaintiff argues that this case falls within the affirmative negligence exception to the prior written notice rule, whereby a municipality "created the defect or hazard through an affirmative act of negligence"; this "exception is limited to work by the [municipality] that immediately results in the existence of a dangerous condition" (Oboler v City of New York, 8 NY3d 888, 889 [2007] [internal quotation marks, ellipsis, brackets and citation omitted]; see Vnuk v City of Albany, 191 AD3d at 1057). "Thus, while the eventual emergence of a dangerous condition as a result of wear and tear and environmental factors does not constitute an affirmative act of negligence, where the allegedly dangerous condition would have been immediately apparent, the affirmative [negligence] exception applies" (Martin v City of New York, 191 AD3d 152, 154 [1st Dept 2020] [citations omitted]).
Plaintiff's opposition to defendants' motion failed to raise a triable issue of fact. Plaintiff submitted the affidavit of a civil engineer who opined that the bollards in the parking lot were dangerous upon installation because they were bolted not into concrete but rather into asphalt, a material that is not dense enough to keep bolts in place. Preliminarily, the engineer's affidavit is conclusory, as it "failed to identify any specific binding industry standard, code, rule, or regulation that the [City] violated in the design of the . . . parking lot" (Cuomo v Incorporated Vil. of Garden City, 188 AD3d 987, 988-989 [2d Dept 2020]; see Serba v Town of Glenville, 223 AD3d at 1009; Dagnino v Key Bank, 200 AD3d 756, 758 [2d Dept 2021]; Hanley v City of New York, 139 AD3d 800, 802 [2d Dept 2016]). Put differently, the engineer simply stated that asphalt is not a dense enough material without identifying any particular standard or other source upon which he based such a conclusion. While the engineer was certainly qualified to render an opinion in this area, such qualifications did not relieve him of the obligation to provide a basis for his opinion (see Swormville Fire Co., Inc. v K2M Architects P.C., 147 AD3d 1310, 1311 [4th Dept 2017]).
Even setting aside the conclusory nature of the affidavit and accepting the engineer's opinions, this submission is still insufficient to defeat summary judgment. As noted above, the affirmative negligence exception applies only in instances where work performed immediately leads to a dangerous condition. The idea that work might have been negligently undertaken does not, in and of itself, mean that a dangerous condition was instantly apparent, and that is not a distinction without a difference within the context of the affirmative negligence exception.
To be sure, the engineer offered an opinion that it was negligent to install the [*4]bollard directly into the asphalt. However, that opinion alone was not enough to trigger application of the exception. Fatally missing from the engineer's affidavit in particular — and plaintiff's opposition papers in general — was any showing that the alleged negligent installation led to a dangerous condition which was immediately apparent. While it is true that the engineer attempted to go further and state that the bollard was unsafe from the time that it was installed, inasmuch as neither his affidavit nor the record contain any proof upon which he could conclude that the bollard — which had been installed 13 years prior to the accident — was not secure upon its installation, his conclusion to that effect amounts to nothing more than speculation. In acknowledging this deficiency in the engineer's affidavit, we are not, as our dissenting colleagues characterize, "stray[ing] into issue determination" but, rather, we are declining to countenance the portion of an opinion which had no basis to be made. With that said, at best, a fair reading of the engineer's affidavit demonstrates, in effect, that the installation of the bollards in asphalt made them more susceptible to loosening over time than if they had been placed in concrete. As the Court of Appeals has held in a case involving claimed negligence relative to the repair of a pothole in asphalt, such a gradual development of a defect over time does not constitute affirmative negligence for the purpose of this exception (see Yarborough v City of New York, 10 NY3d 726, 728 [2008]; see also Parthesius v Town of Huntington, 210 AD3d 789, 791 [2d Dept 2022]; Beiner v Village of Scarsdale, 149 AD3d 679, 681 [2d Dept 2017]; compare Calabrese v City of Albany, 221 AD3d at 1156 [question of fact raised as to affirmative negligence where complaints were lodged shortly after the City performed work, and expert opined that dangerous condition "would have been immediately apparent" and worsened "precipitous(ly)" (internal quotation marks omitted)]; Bania v City of New York, 157 AD3d 612, 614 [1st Dept 2018] [factual question raised where plaintiff's expert found that improperly performed work would have begun to fail within 24 hours]). In sum, because the only evidence in the record regarding the condition of the pertinent bollard following its installation was that it was secure upon being installed and remained so for a number of years afterward, plaintiff failed to raise a question of fact concerning the affirmative negligence exception.
Clark, J.P., and Pritzker, J., concur.
Mackey, J. (dissenting).
We respectfully dissent. We believe Supreme Court erred in finding that defendants City of Ithaca and Ithaca Youth Bureau (hereinafter defendants) submitted prima facie proof of entitlement to judgment as a matter of law, for two reasons. First, in our opinion, the defective bollard that crushed plaintiff's child's hand was not in one of the six locations that General Municipal Law § 50-e authorizes municipalities [*5]to cover with a prior written notice law. And second, defendants failed to submit any proof that they installed the bollard properly, in accordance with industry standards. Thus, the burden never shifted to plaintiff, and defendants' summary judgment motion should have been denied regardless of the adequacy of plaintiff's proof. Finally, even if defendants had shifted the burden, we believe that plaintiff submitted proof presenting a question of fact as to whether the bollard was unreasonably dangerous when installed, precluding a grant of summary judgment.
Section C-107 of the Ithaca City Charter purports to immunize defendants from liability for injuries caused by any "City-owned property or structure being out of repair, unsafe [or] dangerous" unless the City has prior written notice of such condition. If valid, this would obviously cover the defective bollard. However, because § C-107 is facially overbroad and conflicts with the provisions of General Municipal Law § 50-e (4), we believe Supreme Court erred in applying it as written.
General Municipal Law § 50-e (4) authorizes municipalities to enact local laws requiring prior written notice "of the defective, unsafe, dangerous or obstructed condition of any street, highway, bridge, culvert, sidewalk or crosswalk," but prohibits them from expanding the notice of defect requirement to "locations beyond the six specified" (Walker v Town of Hempstead, 84 NY2d 360, 368 [1994] [citation omitted]). Moreover, because prior written notice provisions are enacted in derogation of common law, they must "always [be] strictly construed" (Poirier v City of Schenectady, 85 NY2d 310, 313 [1995], citing Doremus v Incorporated Vil. of Lynbrook, 18 NY2d 362, 366 [1966]; see Gorman v Town of Huntington, 12 NY3d 275, 279 [2009]; 461 Broadway, LLC v Village of Monticello, 144 AD3d 1464, 1466 [3d Dept 2016]). "[T]he Legislature's enumeration of six, specific locations in the exception (i.e., streets, highways, bridges, culverts, sidewalks or crosswalks) [evinces its] intent to exclude any others not mentioned" (Walker v Town of Hempstead, 84 NY2d at 367).
Defendants supported their summary judgment motion with an affidavit from the Ithaca City Forester, Andrew Hillman, who was involved in planning and constructing the 14-space parking lot in Cass Park, adjacent to the area where the accident occurred. Hillman explained that "[t]here are mulched/grassy areas which are not paved on the Waterfront Trail side of the Parking Lot, at each end of the Parking Lot, and in two such areas separating some of the parking spaces." The project included planting "twelve small trees" in the mulched/grassy areas, some of which were protected by bollards, which he referred to as "tree barriers." He explained that the tree barriers "were designed and installed to protect the trees from the force of car doors opening." Because the tree barriers (including the one at issue here) were not located in a street, highway, bridge, culvert, sidewalk [*6]or crosswalk, we believe that the City lacked the legal authority to require prior written notice of defects in those barriers as a condition precedent to the commencement of plaintiff's suit.[FN3] Coming to this conclusion requires a careful analysis of two decisions of the Court of Appeals with seemingly incongruous holdings — Walker v Town of Hempstead, (84 NY2d 360 [1994]) and Groninger v Village of Mamaroneck (17 NY3d 125 [2011]).
In Walker, the Court unanimously ruled that a Town of Hempstead local law requiring prior written notice of defects in any "parking field . . . [or park property], as a condition precedent to the commencement of an action against the Town — is flatly inconsistent with the plain language of section 50-e (4)" (84 NY2d at 366 [internal quotation marks omitted)] and that lack of prior written notice of a defect in any such location is "not a defense" (id. at 368). In Groninger, however, the Court held, without expressly overruling Walker, that a municipal parking lot can be covered by a prior written notice law because it serves the same "functional purpose" as a highway (17 NY3d at 129 [internal quotation marks omitted]).[FN4] Whether the bollard at issue in this case may be covered by a prior written notice law seems to boil down to whether it was in an area deemed to be a "highway" or on "park property." If it is the former, then under Groninger it may be covered, but if it is the latter, then under Walker it may not. The rationale stated by the Court in Groninger for deeming a parking lot to be a highway is that it is "accessible . . . for vehicular travel" (id.). That rationale does not apply here, as the bollard was not installed in a location open to vehicular travel but, rather, was placed outside the area where cars could drive or park, serving as a barrier to protect trees from damage. Accordingly, we do not believe it was located on a "highway" within the meaning of General Municipal Law § 50-e (4).[FN5] This view is consistent with the Court of Appeals' admonition that because prior written notice statutes are in derogation of common law, they must be strictly construed (see Poirier v City of Schenectady, 85 NY2d at 313; see also Vucetovic v Epsom Downs, Inc., 10 NY3d 517, 521 [2008] [rejecting City of New York's argument that an allegedly defective "tree well" located in a sidewalk is an "integral part of the sidewalk"]). At a minimum, in our opinion, defendants did not establish as a matter of law that the bollard was located on a highway within the meaning of General Municipal Law § 50-e (4), so summary judgment should have been denied (see Staudinger v Village of Granville, 304 AD2d 929, 929 [3d Dept 2003] [finding a question of fact where "the alleged defect that caused plaintiff's accident was an anchor sticking out of the ground in an area adjacent to the parking lot"]).
Further, even if the City's prior written notice law were applied to the tree barriers, defendants' summary judgment motion should have been denied [*7]because they failed to shift the burden to plaintiff on the issue of whether defendants created a dangerous condition when they installed the tree barriers. To sustain their prima facie burden on a motion for summary judgment dismissing a complaint, defendants are obligated to address the specific allegations in the complaint (see Trepuk v Frank, 56 NY2d 779, 780 [1982]; Wiater v Lewis, 197 AD3d 782, 783 [2d Dept 2021]; Edwards v Wal-Mart Stores, 243 AD2d 803, 803 [3d Dept 1997]). "The prima facie showing which a defendant must make on a motion for summary judgment is governed by the allegations of liability made by the plaintiff in the pleadings. [Where] the plaintiff, in her pleadings, alleged that the [municipality] created the [defect in question] . . . the [municipality] was required to demonstrate, prima facie, that it did not have prior written notice of the allegedly defective condition [and] that it did not create the condition . . . . Since the Town failed to make this showing, the burden never shifted to the plaintiff to submit evidence sufficient to raise a triable issue of fact" (Breest v Long Is. R.R., 140 AD3d 819, 819-820 [2d Dept 2016] [internal quotation marks, brackets and citations omitted; emphasis added]). Here, plaintiff alleged in her complaint that defendants negligently "installed . . . and created . . . a known dangerous condition, namely metal barriers affixed to the parking lot's surface." This was amplified in plaintiff's expert witness disclosure, which asserted that "bollards such as the ones located at the Parking Lot should never be installed directly into an asphalt surface," that asphalt "is not a dense enough material to keep the bolts in place, and is not designed for that purpose," that "bollards should always be installed into concrete bases," and that "the bollards were in an unsafe condition from the moment they were installed."
Neither Supreme Court nor the majority mentions how, if at all, defendants shifted the burden to plaintiff on the issue of whether the bollards were properly installed.[FN6] To do so, defendants were required to submit proof on that issue in nonconclusory evidentiary form (see Piccolo v De Carlo, 90 AD2d 609, 610 [3d Dept 1982]). Their only proof on the issue came from Hillman, a forester, who did not claim to have any construction or engineering experience. Hillman stated in his affidavit that he did not install the bollards himself and he did not offer any opinions as to whether the installation was done in accordance with professional or industry standards. Rather, he simply stated that "the tree barriers . . . were all firmly installed." There was no showing, however, that he had any basis to make even that limited statement, other than that he "pulled on the barriers with [his] hands and arms." He did not state when or how many of the barriers he "pulled on" and defendants submitted no evidence to show that he was in any way qualified to opine on whether they were properly installed [*8]or whether pulling on them was an adequate safety test. Defendants' motion is devoid of any reference to industry standards, codes, rules or regulations and Hillman's statement that the barriers were firmly installed is manifestly conclusory and self-serving; we believe it was insufficient to shift the burden to plaintiff (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Even if defendants had shifted the burden to plaintiff, however, in our opinion plaintiff submitted sufficient proof to present a question of fact for the jury. Among plaintiff's proof was the affidavit of Edward J. Zemeck, a civil engineer specializing in technical investigation and analysis involving street, sidewalk and parking lot construction and maintenance. Zemeck detailed that he had 50 years of professional experience in construction, including as a project manager for bridge, highway and various infrastructure projects, together with "concrete placement" associated with such projects. He stated that he was familiar with literature and studies in the field of civil engineering but was not aware of any published data "addressing the strength of bolted connections into asphalt for the purposes of properly securing bollards to resist foreseeable loading conditions."[FN7] However, based on his education and experience, Zemeck opined that defendants' installation of the bollards "was a breach of the engineering standard of care" because "[a]sphalt . . . is not a dense enough material to keep the bolts in place and is not designed for that purpose." Rather, in his opinion, "bollards such as these should always be installed into or bolted onto proper concrete bases." As a result, Zemeck opined that "the bollards were in an unsafe condition from the moment they were installed . . . [and constituted] a highly unstable, heavy fixture in an area where human interaction with the fixtures was foreseeable."
We disagree with the majority's conclusion that Zemeck's opinions were conclusory. The majority faults Zemeck for not citing to "any specific binding industry standard, code, rule or regulation" that defendants violated, but makes no mention of his statement that he was not aware of any published data on the subject. Rather, he based his opinions on his extensive experience in civil engineering and managing construction projects. "The absence of a violation of a specific code or ordinance is not dispositive of the plaintiff's allegations based on common-law negligence principles. Accordingly, a defendant may be held negligent for departing from generally accepted customs and practices even when the allegedly defective condition is in compliance with the relevant codes and ordinances" (Martell v Dorchester Apt. Corp., 208 AD3d 1183, 1185 [2d Dept 2022] [citations omitted]). An expert's opinion is admissible where they possess the requisite skill, training, education, knowledge or experience from which it can be assumed that the opinion rendered is reliable and "any purported [*9]shortcomings in the proposed testimony [goes] to the weight to be given [the expert's] testimony, not its admissibility and [can] appropriately be explored on cross-examination" (Ghazala v Shore Haven Apt. Del, LLC, 229 AD3d 447, 449 [2d Dept 2024] [internal quotation marks and citation omitted]; see Scott v Santiago, 230 AD3d 933, 936 [3d Dept 2024] [expert's opinion that the defendant "deviated from the standard of care" was sufficient to defeat summary judgment motion]; Philwold LLC v Inergy LP, 140 AD3d 1272, 1274-1275 [3d Dept 2016]).
Finally, we disagree with the majority's conclusion that there is no question of fact presented as to whether defendants' installation of the bollards resulted in an "immediate dangerous condition." In reaching that conclusion, we believe the majority has strayed into issue determination, rather than issue finding. "As has been frequently observed, a court's function on a motion for summary judgment is issue finding, not issue determination. Summary judgment is a drastic remedy which should not be granted where there is any doubt of the existence of a triable issue or where the issue is even arguable" (Hierro v Bliss Co., 145 AD2d 731, 732 [3d Dept 1988] [citations omitted]). Here, Zemeck clearly stated his opinion that the bollards were unsafe from the moment they were installed, because asphalt is not a dense enough material to keep the bolts attaching them in place. The fact that the bollards did not fail immediately does not mean, as a matter of law, that they were not dangerous immediately (compare Yarborough v City of New York, 10 NY3d 726, 728 [2008] [finding summary judgment appropriate where no evidence was presented that the pothole on which the plaintiff tripped was dangerous immediately after it was repaired by the defendant]).
In our opinion, the majority has misapplied the rule in Yarborough. As the Court of Appeals explained in San Marco v Village/Town of Mount Kisco (16 NY3d 111 [2010]), Yarborough "recogniz[es] the difficulty in determining, after the passage of time, whether the initial [pothole] repair was negligent. At the same time, the affirmative negligence exception addressed situations where a hazard was foreseeable, insofar as the municipality created it by, for example, digging an unmarked ditch in a road or neglecting to cover a street drain" (id. at 117 [emphasis added]). Here, there is nothing in the record to suggest that the passage of time has made it difficult to determine whether defendants' installation of the bollard was negligent. Unlike the situation presented in Yarborough, the question of whether it was negligent to install bollards by bolting them onto asphalt is not dependent on evidence that once existed but has been lost by the passage of time. Because a question of fact has been presented as to whether defendants affirmatively created the dangerous condition that resulted in the child's injury, we believe it was error for Supreme Court to grant defendants' summary [*10]judgment motion.
The majority also errs, in our view, in holding that plaintiff was required to show that the dangerous condition of the bollard was "immediately apparent" when it was installed. Adding that requirement effectively immunizes municipalities from liability under the affirmative negligence exception, so long as the dangerous condition created by the municipality has been hidden from view. In other words, latent defects could never give rise to liability, even if affirmatively created by the municipality and dangerous immediately. Neither Yarborough nor any other case from the Court of Appeals has, to our knowledge, required such a showing but, even if they had, plaintiff has presented a question of fact as to whether the dangerous condition at issue here was apparent when the bollard was installed. Unlike Yarborough, where any evidence of the allegedly defective repair work lay within the repair itself, here the defect — bolting the bollard onto asphalt — was readily apparent when it was installed, for the reasons explained by Zemeck.
We believe it is for a jury, not this Court, to determine whether to credit Zemeck's opinion. Viewing the evidence, as we must, in the light most favorable to plaintiff (see DeCaro v Somerset Indus., Inc., 228 AD3d 1107, 1110 [3d Dept 2024]), in our opinion defendants' motion for summary judgment should have been denied.
Reynolds Fitzgerald, J., concurs.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Plaintiff later added Cornell University as a defendant, given the university's involvement in the design of the parking lot, but plaintiff's claims against the university were dismissed and plaintiff does not appeal from that ruling.

Footnote 2: The dissent concludes that the subject bollard was not located in the parking lot and, as a result, it "was not in one of the six locations that General Municipal Law § 50-e authorizes municipalities to cover with a prior written notice law." The problem with that position is threefold. First, plaintiff has not raised such an argument and, accordingly, this issue is not properly before this Court. To address this issue now would be unfair to defendants, who have been provided neither notice of such a claim nor an opportunity to be heard. Second, plaintiff has conceded in her appellate brief that the bollard was, in fact, in the parking lot. To that end, plaintiff states in her brief that the "bollards were present along the parking lot's surface." Third, even setting aside plaintiff's admission, the record contains photographs which plainly depict that the bollard was installed in the asphalt surface of the parking lot, in an area where cars had clear access and were expected to park, thereby confirming that the bollard was located in the parking lot.

Footnote 3: To establish liability, plaintiff would still be required to prove that defendants had actual or constructive notice of the dangerous condition that caused the accident, or negligently created the same (see Dong v Cazenovia College, 263 AD2d 606, 607 [3d Dept 1999]; Eaton v Pyramid Co. of Ithaca, 216 AD2d 823, 824 [3d Dept 1995]). Defendants' summary judgment motion, however, was based on lack of prior written notice and did not address these other questions.

Footnote 4: The three dissenting Judges in Groninger protested that the majority was violating principles of stare decisis by ruling that a "parking lot" could be covered by a prior written notice law when "we held with great clarity in Walker that a 'parking field' [could not]" (17 NY3d at 133 [Lippman, Ch. J., dissenting]).

Footnote 5: That plaintiff may have styled the location of the bollard as a "parking lot" is not determinative, as suggested by the majority. Rather, the issue is whether it was on a "highway," and photographs clearly show that it was installed in an area where cars were not allowed to drive or park.

Footnote 6: Although it does not specifically address Breest v Long Is. R.R., the majority decision creates a clear conflict between this Department and the Second regarding which party bears the initial burden on summary judgment to address a plaintiff's allegation that the defendant created a defective condition.

Footnote 7: At oral argument, defendants' counsel conceded that he was not aware of any written standards that would apply.